UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LARRY W. ASHWORTH** | **CASE NO. 2:20-CV-00053** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **INTERNATIONAL PAPER CO., ET AL.** | **MAGISTRATE JUDGE KAY** |

MEMORANDUM RULING

Before the court are a Motion to Dismiss [doc. 17] and Motion for a More Definite Statement [*id.*] filed by defendant BNSF Railway Company, in response to the putative class action brought by plaintiff Larry W. Ashworth. The motions are unopposed.

I.
BACKGROUND

This action arises from claims of land contamination by plaintiff Larry Ashworth, who asserts that his property has been damaged by toxic waste from former creosote plants in Beauregard Parish, Louisiana. Doc. 1. Specifically, Mr. Ashworth identifies the International Paper Company ("IP") site (Parcel A) and the American Creosote site (Parcel B). *Id.* at ¶¶ 6–10. He asserts that creosoting operations ceased on Parcel A in 1989 and on Parcel B in 1963. *Id.*

Mr. Ashworth asserts that he first became aware of the contamination less than one year before filing this suit, when he witnessed "dark colored thick liquid coming from the ground" after extracting a tree stump. *Id.* at ¶ 25. He brought claims for damages and injunctive relief based on theories of negligence (Count I), strict liability (Count II), and

continuing nuisance and trespass (Count III). He asserts that he is also entitled to punitive damages under former Louisiana Civil Code Article 2315.3 (Count IV).

As defendants Mr. Ashworth names various corporations as owners/operators of the creosote plants, or successors to same. He also raises the same claims against BNSF Railway Company, which allegedly owned a right-of-way and track "in and near" the two parcels where creosote-treated poles were stored and/or loaded and transported on BNSF's railways for commercial sale. *Id.* at ¶ 10. Mr. Ashworth further asserts that BNSF and IP discovered contamination in the soil and waters underlying the creosote plant sites when they drilled monitoring wells near Parcels A and B. *Id.* at ¶¶ 10, 19.

BNSF now moves for dismissal of all claims raised against it, arguing that Mr. Ashworth's factual allegations fail to state a claim on which relief can be granted for each of the above counts. Doc. 17, att. 1. It also asserts that Mr. Ashworth should be limited to pre-purchase damages under the subsequent purchaser rule and moves for a more definite statement as to certain allegations. No party has filed an opposition to this motion and the time for doing so has passed. Accordingly, the motions are regarded as unopposed.

## II.
## LAW & APPLICATION

### A. *Rule 12(b)(6)*

Rule 12(b)(6) allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider matters of which it may take judicial notice, including

matters of public record. *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished). Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### B. Application

#### 1. Count I – Negligence

Under the negligence count, Mr. Ashworth alleges that defendants (including BNSF) are liable for a continuing tort based on their "knowing, and calculated failure to remediate and remove" contaminated soils and water beneath the land they controlled. Doc. 1, ¶ 33. He further asserts several specific breaches, including a failure to:

(1) properly implement safe practices to avoid the discharge, leakage, and seepage of pollution on and then from the property they used;

(2) properly direct and supervise the training of employees and contractors in safe and protective practices which would have protected the environment and prevented pollution;

(3) provide timely and adequate warning to neighboring and community landowners on whose property wood treating wastes and chemicals have trespassed as to the scope and extent of the hazardous and toxic chemical releases from [the defendants'] operations;

(4) prevent the continued offsite migration of contaminants resulting from the discharge of wood treating wastes and chemicals into the environment;

(5) remediate contaminated lands and facilities, i.e. including but not limited to the surface impoundment units and solid waste management units, in such a manner as to eliminate such lands as a continued source of subsurface soil and ground water pollution to on site, adjacent, and off-site properties; and

(6) properly evaluate and assess the true scope and extent of contamination into the subsurface environment in order to be able to design and implement an effective and reasonably prudent remedial system.

Doc. 1, ¶ 36.

The elements of a negligence claim are well established under Louisiana law. "A plaintiff must establish that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty; (3) the plaintiff suffered damages; and (4) the breach of the duty proximately caused the damages." *Gulf Prod. Co., Inc. v. Hoover Oilfield Supply, Inc.*, 672 F.Supp.2d 752, 756 (E.D. La. 2009) (quoting *Lloyd's Leasing Ltd. v. Conoco*, 868 F.2d 1447, 1449 (5th Cir. 1989)).

BNSF argues that plaintiff's allegations fail to state a negligence claim under the above standards, because he has not specified how BNSF was negligent in its handling of

the poles or articulated a duty breached by BNSF. BNSF further asserts that the complaint lacks sufficient detail on a plausible theory of causation between BNSF's activities and plaintiff's property damage. Doc. 17, att. 1, pp. 7–9.

The court disagrees. Plaintiff has alleged that BNSF had some responsibility for transporting and storing poles treated with toxic chemicals, on or near parcels where sub-surface contamination was later discovered. He has also alleged that BNSF, in particular, drilled monitoring wells and became aware of subsurface contamination at those sites. Several of the above allegations appear more suited to the creosote plant defendants, but there is enough articulated with respect to BNSF's possible failure of due care to satisfy plaintiff's initial burden and invite discovery. Accordingly, the motion to dismiss is denied as to the negligence claim.

### 2. *Count II – Strict Liability*

Mr. Ashworth has also raised strict liability claims against BNSF under Louisiana Civil Code articles 667, 2317 and 2317.1, and 2322. To this end he has alleged that BNSF had "custody, control, and garde of damaging chemicals associated with the creosoting process" and is strictly liable for the unreasonably dangerous condition caused by the migration of these chemicals. Doc. 1, ¶ 39. BNSF maintains that the cause of action fails under all of these provisions.

### a. Article 667

Until tort reform amendments enacted in 1996, Article 667 imposed strict liability for all activities deemed "ultrahazardous."[1] *E.g.*, *Brown v. Olin Chem. Corp.*, 231 F.3d 197, 200 (5th Cir. 2000). An activity was ultrahazardous under Article 667 if it satisfied the following criteria: (1) it related to land or some other immovable; (2) it caused the injury, with the defendant engaged directly in the activity; and (3) it did not require substandard conduct to cause injury. *Bartlett v. Browning-Ferris Indus., Chem. Servs., Inc.*, 683 So.2d 1319, 1321–22 (La. Ct. App. 3d Cir. 1996). The most crucial issue is whether the activity can be safely done with the exercise of reasonable care. If such care will not sufficiently mitigate the risk of harm, then the activity is by its nature ultrahazardous. *Id.* at 1322.

There is nothing in the complaint to support, much less allege, that the storage and treatment of the creosote-treated poles would be dangerous even with the exercise of reasonable care. Accordingly, plaintiff has shown no basis for deeming the activities ultrahazardous.[2] These claims against BNSF must therefore be dismissed.

### b. Articles 2317 and 2317.1

Mr. Ashworth also brings claims under Articles 2317 and 2317.1. Prior to the 1996 amendments, these statutes allowed for a defendant's strict liability for dangerously

---

[1] The amended article now limits strict liability to pile-driving and blasting with explosives. *See* La. Civ. Code art. 667. Accordingly, liability for any other activity requires a showing of negligence.

[2] Additionally, as BNSF notes, under federal law it may not refuse a reasonable request for transportation – including transportation of hazardous materials. 49 U.S.C. § 11101(a); *Town of E. Troy v. Soo Line R.R. Co.*, 409 F. Supp. 326, 330 (D. Wis. 1976). Accordingly, the common carrier exception likely shields it from liability though it has not been adopted by Louisiana courts. *See* Restatement (Second) of Torts § 521 (1977); *see, e.g.*, *Ind. Harbor Belt R.R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1180 (7th Cir. 1990); *Actiesselskabet Ingrid v. Central R. Co. of New Jersey*, 216 F. 72 (2d Cir. 1914).

defective things in his custody. To prevail on such a claim, a plaintiff must show that (1) the defendant had custody of a thing, (2) the thing had a vice or defect, (3) the vice or defect created an unreasonable risk of harm, (4) the defendant failed to make the thing safe or take adequate steps to prevent damage, and (5) that the vice or defect caused the damage. *Friou v. Phillips Petrol. Co.*, 948 F.2d 972 (5th Cir. 1991) (citing *Kent v. Gulf State Utils. Co.*, 418 So.2d 493, 496–98 (La. 1982)). For purposes of this statute, "vice" is synonymous with "defect" and describes "a physical imperfection, deformity or taint." *Myers v. Dronet*, 801 So.2d 1097, 1107 (La. Ct. App. 3d Cir. 2001). Mr. Ashworth has not described any vice or defect with respect to the creosote-treated poles in BNSF's custody. Accordingly, he also fails to state a strict liability claim under these articles.

### c. Article 2322

Finally, before 1996 Article 2322 allowed strict liability claims for damages caused by the ruin of a building owned by the defendant. *Jackson v. Gardiner*, 785 So.2d 981, 984–85 (La. Ct. App. 2d Cir. 2001). "Ruin," as BNSF notes, is a term of art that reflects "the fall or collapse of a substantial component of the building." *Calloway v. CNG Producing Co.*, 1999 WL 447451, at *5 (E.D. La. Jun. 29, 1999) (citing *Mott v. ODECO*, 577 F.2d 273 (5th Cir. 1978)). Mr. Ashworth describes no particular building owned by BNSF that contributed to the damages alleged here, nor does he allege the ruin of any of BNSF's facilities. Accordingly, he also fails to state a claim under Article 2322.

### 3. Count III – Continuing Nuisance and Trespass

BNSF argues that the claims against it for continuing nuisance and trespass fail because plaintiff alleges no ongoing conduct or presence of any neighbor. As BNSF notes,

the essential inquiry in determining the existence of a continuing trespass claim is whether the defendant "perpetuates the injury through overt, persistent, and ongoing acts" giving rise to successive damages. *Hogg v. Chevron USA*, 45 So.3d 991, 1003 (La. 2020). Where, on the other hand, the trespass permanently changes the physical condition of the land, no additional cause of action accrues merely because the damage continues to exist or even worsens. *Id.* Here plaintiff has alleged that creosoting operations ceased at Parcel A in 1989 and at Parcel B in 1963. Doc. 1, ¶¶ 7–11. He does not allege any ongoing conduct by BNSF after that period. Accordingly, plaintiff fails to state a claim of continuing trespass.

The continuing nuisance claim arises under Louisiana Civil Code Article 667. Articles 667 through 669 set "standards of responsibility for a landowner to his neighbors[.]" *Inabnet v. Exxon Corp.*, 642 So.2d 1243, 1251 (La. 1994). Accordingly, it only creates obligations between owners of properties that are adjacent or lay physically close to one another. *Barasich v. Columbia Gulf Transmission Co.*, 467 F.Supp.2d 676, 690 (E.D. La. Sep. 28, 2006); *TS&C Investments, LLC v. Beusa Energy, Inc.*, 637 F.Supp.2d 370, 383 (W.D. La. 2009). On this principle, the Eastern District of Louisiana rejected plaintiffs' nuisance claims relating to work done on the Mississippi River Gulf Outlet. *In re Katrina Canal Breaches Consol. Litig.*, 647 F.Supp.2d 644 (E.D. La. 2009). There it noted that the closest plaintiff lived three miles from the levee and the canal, precluding a finding that it was a neighbor within the meaning of the statute. *Id.* at 734.

Mr. Ashworth asserts that his property is approximately 5.1 miles away from Parcel A. Doc. 1, ¶ 20; *see* doc. 2. He does not describe the property over which BNSF was owner or proprietor. The exhibit attached identifies only Parcels A and B and the Ashworth

property. Doc. 2. The court cannot gauge the scale or locate BNSF-owned or -controlled property on this map. Mr. Ashworth, however, has not alleged that BNSF's property is adjacent to his or otherwise any closer. Accordingly, he fails to establish that he is a neighbor within the meaning of the nuisance statute and this claim fails as well.

### 4. Count IV – Punitive Damages

Finally, Mr. Ashworth seeks punitive damages from BNSF under Louisiana Civil Code Article 2315.3 (repealed) with the following:

> Further, BNSF's predecessors stored, transported, handled, or otherwise managed toxic and hazardous wood treating wastes long before 1984 and the pollution began migrating off of BNSF controlled property and caused extensive damage to Plaintiffs' class members' properties between the years of 1984 and 1996, as well as to the present. BNSF's deficient conduct in the storing, handling and transport of the toxic materials as described above was in wanton and reckless disregard for public safety for all of the reasons stated above in the preceding paragraphs.

Doc. 1, ¶ 42. BNSF argues that there is no basis for such an award, because Mr. Ashworth fails to adequately allege conduct occurring while Article 2315.3 was in effect.

Punitive damages are only allowed under Louisiana law where authorized by statute. *E.g.*, *Mosing v. Domas*, 830 So.2d 967, 973 (La. 2002). Article 2315.3 was in effect from 1984 until 1996 and allowed a plaintiff to recover exemplary damages if he could prove injuries "caused by the defendant's wanton and reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances." *Addison v. Illinois Central R. Co.*, 967 F.Supp. 173, 180 (E.D. La. 1997). The article only applies to conduct that occurred while it was in effect. *Anderson v. Avondale Indus. Inc.*, 798 So.2d

93, 97–101 (La. 2001). The relevant inquiry, then, is when that conduct occurred and not when the cause of action arose. *See id.*

Under the punitive damages claim plaintiff has only alleged that BNSF engaged in the damage-causing activities before 1984 and that these activities then caused the creosote to migrate to his property while Article 2315.3 was in effect. Elsewhere, however, plaintiff alleged that BNSF's conduct lasted "from the inception of the creosoting operations/business to its cessation on or about 1989[.]" Doc. 1, ¶ 10. At this stage the court does not require any more specificity as to dates and plaintiff has adequately alleged that some conduct giving rise to punitive damages might have occurred within the time period covered by Article 2315.3. Accordingly, the motion is denied as to this claim.

### 5. *Subsequent Purchaser Limitation*

Next, BNSF argues that plaintiff's claims must be dismissed to the extent he seeks damages incurred before his purchase of the property. To this end BNSF attaches a cash warranty deed. *See* doc. 17, att. 2. From this deed it appears that Mr. Ashworth purchased the property in 1987 and that the prior landowner did not assign any litigation rights. *Id.* BNSF's attachment is outside the scope of this motion. Moreover, any question of time limitations on damages is premature at this point and better suited to summary judgment. Accordingly, the motion is denied in this respect.

### 6. *Motion for More Definite Statement*

Finally, BNSF argues that it is entitled to a more definite statement under Rule 12(e) on the timing and alleged manner of negligence. As shown above, however, Mr. Ashworth has alleged BNSF's involvement in the storage and transportation of a specific item from

a specific site within an approximate date range. While the time range is broad, the geographic particularity and type of damage alleged gives BNSF adequate notice to begin investigating the claims against it. Accordingly, this motion is also denied.

## III.
### CONCLUSION

The Motion to Dismiss [doc. 17] will be granted in part and denied in part as described above. The Motion for a More Definite Statement [*id.*] will be denied.

**THUS DONE AND SIGNED** in Chambers on this 15th day of May, 2020.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**