UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**LARRY W. ASHWORTH**                    **CASE NO.  2:20-CV-00053**

**VERSUS**                               **JUDGE JAMES D. CAIN, JR.**

**INTERNATIONAL PAPER CO., ET AL.**      **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the court is a Motion to Dismiss [doc. 32] and Motion for More Definite Statement [*id.*] filed by defendant International Paper Company, in response to the putative class action brought by plaintiff Larry W. Ashworth. The motion is regarded as unopposed.

## I.
### BACKGROUND

This action arises from claims of land contamination by plaintiff Larry Ashworth, who asserts that his property has been damaged by toxic waste from former creosote plants in Beauregard Parish, Louisiana. Doc. 1. Specifically, Mr. Ashworth identifies the International Paper Company ("International Paper") site (Parcel A) and the American Creosote site (Parcel B). *Id.* at ¶¶ 6–10. He asserts that creosoting operations ceased on Parcel A in 1989 and on Parcel B in 1963. *Id.*

Mr. Ashworth alleges that he first became aware of the contamination less than one year before filing this suit, when he witnessed "dark colored thick liquid coming from the ground" after extracting a tree stump. *Id.* at ¶ 25. He brings claims for damages and injunctive relief based on theories of negligence (Count I), strict liability (Count II), and

continuing nuisance and trespass (Count III). He asserts that he is also entitled to punitive damages under former Louisiana Civil Code Article 2315.3 (Count IV).

As defendants Mr. Ashworth names various corporations as owners/operators of the creosote plants, or successors to same. Among these is International Paper, which now moves for dismissal of all claims under Federal Rule of Civil Procedure 12(b)(6) and/or a more definite statement under Rule 12(e). Doc. 32. To this end it argues that (1) plaintiff fails to allege facts supporting his assumption that the contaminant on his property is creosote from International Paper's plant; (2) plaintiff cannot prevail under a theory of strict liability, nuisance, or continuing trespass; and (3) plaintiff should be ordered to refine his conclusory allegations. Doc. 32, att. 1.

The court has already dismissed the strict liability, nuisance, and continuing trespass claims against codefendant BNSF Railway Company ("BNSF") on an unopposed motion to dismiss, based on similar arguments to the ones now asserted by International Paper. Doc. 25. Mr. Ashworth has failed to respond to International Paper's motion and his time for doing so has passed. Accordingly, this motion is likewise regarded as unopposed.

## II.
### LAW & APPLICATION

### A. *Rule 12(b)(6)*

Rule 12(b)(6) allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider matters of which it may take judicial notice, including

matters of public record. *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished). Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### B. Application

#### 1. Failure to link contaminant to IP

Mr. Ashworth alleges that he became aware of contamination on his property in the last year, when he discovered "toxic waste, with chemical constituents indicative of creosote by-products, percolating up into [his] yard." Doc. 1, p. 2. He further asserts that the "most obvious source for [this] contamination is surface runoff or creosote contaminated groundwater from the American Creosote Superfund Site and/or the International Paper DeRidder Creosote Site, adjacent thereto." *Id.* Based on photographs, statements made by public officials, and "hard scientific evidence associated with the photographs," he alleges the existence of "an enormous toxic waste plume [that] stretches in some form or fashion at least 5.1 miles from the original site of contamination." *Id.* He also alleges that groundwater testing in the subsurface sands of the Chicot Aquifer, which

serves as the DeRidder area's principal source of fresh drinking water, has "revealed the same toxic compounds which were/are the results of [defendants'] creosoting operations, which include but are not limited to benzene, ethylbenzene, toluene, xylene, creosols, naphthalene, phenol, PCP, acenaphthene, phenanthrene, flourene [*sic*], dibenzofuran, and a host of other toxic hydrocarbon compounds." *Id.* at 10–11.

International Paper maintains that these allegations are not enough to establish a nexus between the alleged contaminant and its activities at Parcel A. To this end it points to dismissal of claims under state law and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, where the plaintiff failed to adequately allege if/how the contaminant entered his property. *See Bellaire v. Town of Wheatfield*, 401 F.Supp.3d 405, 415 (W.D.N.Y. 2019); *Pinares v. United Tech. Corp.*, 2011 WL 240522 (S.D. Fla. Jan. 19, 2011); *Chubb Customs Ins. Co. v. Space Sys./Loral, Inc.*, 2010 WL 689940, at *5 (N.D. Cal. Feb. 23, 2010). As these cases show, a complaint must do more than "recite and intone generic and formulaic conclusions" and should instead allege a plausible theory for contamination. *Bellaire*, 401 F.Supp.3d at 415 (quoting *Taylor v. Denka Performance Elastomer LLC*, 332 F.Supp.3d 1039, 1055 (E.D. La. 2018)).

Here, however, the plaintiff has alleged the existence of a toxic plume of creosote from the sites based on his discovery of waste with "chemical constituents indicative of creosote by-products" after disturbing the soil on his property five miles away. He has also alleged contamination of the area's groundwater from International Paper's operations. Given the proximity of the defendants' creosoting operations, the plaintiff's allegations of

a scientific investigation, and the asserted theory of migration (through either groundwater contamination or surface runoff), the court finds a plausible link between International Paper's alleged actions and plaintiff's alleged injuries. Accordingly, the motion to dismiss is denied in this regard.

### 2.   *Count II – Strict Liability*

Mr. Ashworth has also raised strict liability claims against International Paper under Louisiana Civil Code articles 667, 2317 and 2317.1, and 2322. To this end he has alleged that International Paper had "custody, control, and garde of damaging chemicals associated with the creosoting process" and is strictly liable for the unreasonably dangerous condition caused by the migration of these chemicals. Doc. 1, ¶ 39. International Paper maintains that the cause of action fails under all of these provisions.

#### a.   *Article 667*

Until tort reform amendments enacted in 1996, Article 667 imposed strict liability for all activities deemed "ultrahazardous."[1] *E.g.*, *Brown v. Olin Chem. Corp.*, 231 F.3d 197, 200 (5th Cir. 2000). An activity was ultrahazardous under Article 667 if it satisfied the following criteria: (1) it related to land or some other immovable; (2) it caused the injury, with the defendant engaged directly in the activity; and (3) it did not require substandard conduct to cause injury. *Bartlett v. Browning-Ferris Indus., Chem. Servs., Inc.*, 683 So.2d 1319, 1321–22 (La. Ct. App. 3d Cir. 1996). The most crucial issue is whether the activity can be safely done with the exercise of reasonable care. If such care will not

---

[1] The amended article now limits strict liability to pile-driving and blasting with explosives. *See* La. Civ. Code art. 667. Accordingly, liability for any other activity requires a showing of negligence.

sufficiently mitigate the risk of harm, then the activity is by its nature ultrahazardous. *Id.* at 1322.

There is nothing in the complaint to support, much less allege, that International Paper's wood treatment activities would be dangerous even with the exercise of reasonable care. There are also no allegations that the activity involved any endeavor recognized as ultrahazardous under Louisiana statute or jurisprudence. *See Brown v. Olin Chem. Corp.*, 231 F.3d 197 (5th Cir. 2000) (quoting *Bartlett*, 683 So.2d at 1321)) (noting that pile driving, storage of toxic gas, blasting with explosives, and crop dusting were specifically designated as ultra-hazardous under Article 667). Accordingly, plaintiff has shown no basis for liability under this article and the claims must be dismissed.

### b. Articles 2317 and 2317.1

Mr. Ashworth also brings claims under Articles 2317 and 2317.1. Prior to the 1996 amendments, these statutes allowed for a defendant's strict liability for dangerously defective things in his custody. To prevail on such a claim, a plaintiff must show that (1) the defendant had custody of a thing, (2) the thing had a vice or defect, (3) the vice or defect created an unreasonable risk of harm, (4) the defendant failed to make the thing safe or take adequate steps to prevent damage, and (5) that the vice or defect caused the damage. *Friou v. Phillips Petrol. Co.*, 948 F.2d 972 (5th Cir. 1991) (citing *Kent v. Gulf State Utils. Co.*, 418 So.2d 493, 496–98 (La. 1982)). For purposes of this statute, "vice" is synonymous with "defect" and describes "a physical imperfection, deformity or taint." *Myers v. Dronet*, 801 So.2d 1097, 1107 (La. Ct. App. 3d Cir. 2001). Mr. Ashworth has not described any

vice or defect with respect to any aspect of International Paper's creosoting operations. Accordingly, he also fails to state a strict liability claim under these articles.

### c.  Article 2322

Finally, before 1996 Article 2322 allowed strict liability claims for damages caused by the ruin of a building owned by the defendant. *Jackson v. Gardiner*, 785 So.2d 981, 984–85 (La. Ct. App. 2d Cir. 2001). "Ruin," as BNSF notes, is a term of art that reflects "the fall or collapse of a substantial component of the building." *Calloway v. CNG Producing Co.*, 1999 WL 447451, at *5 (E.D. La. Jun. 29, 1999) (citing *Mott v. ODECO*, 577 F.2d 273 (5th Cir. 1978)). Mr. Ashworth describes no particular building owned by International Paper that contributed to the damages alleged here, nor does he allege the ruin of any of International Paper's facilities. Accordingly, he also fails to state a claim under Article 2322.

### 3. Count III – Continuing Nuisance and Trespass

International Paper argues that the claims against it for continuing nuisance and trespass fail because plaintiff alleges no ongoing conduct or presence of any neighbor. In Louisiana, the concept of a continuing tort arises from the nuisance code. It depends on continual unlawful acts, rather than "the continuation of the ill effects of an original, wrongful act." *Crump v. Sabine River Auth.*, 737 So.2d 720, 728 (La. 1999). As International Paper notes, the essential inquiry in determining the existence of a continuing trespass claim is whether the defendant "perpetuates the injury through overt, persistent, and ongoing acts" giving rise to successive damages. *Hogg v. Chevron USA*, 45 So.3d 991, 1003 (La. 2010). Where, on the other hand, the trespass permanently changes the physical

condition of the land, no additional cause of action accrues merely because the damage continues to exist or even worsens. *Id.* Here plaintiff has alleged that creosoting operations ceased at Parcel A in 1989 and at Parcel B in 1963. Doc. 1, ¶¶ 7–11. He does not allege any ongoing conduct by International Paper after that period. Accordingly, plaintiff fails to state a claim of continuing trespass or nuisance.

International Paper also alleges that the nuisance claim fails due to plaintiff's inability to show that he is a neighbor within the meaning of Louisiana's nuisance statutes. The continuing nuisance claim arises under Louisiana Civil Code Article 667. Articles 667 through 669 set "standards of responsibility for a landowner to his neighbors[.]" *Inabnet v. Exxon Corp.*, 642 So.2d 1243, 1251 (La. 1994). Accordingly, it only creates obligations between owners of properties that are adjacent or lay physically close to one another. *Barasich v. Columbia Gulf Transmission Co.*, 467 F.Supp.2d 676, 690 (E.D. La. Sep. 28, 2006); *TS&C Investments, LLC v. Beusa Energy, Inc.*, 637 F.Supp.2d 370, 383 (W.D. La. 2009). On this principle, the Eastern District of Louisiana rejected plaintiffs' nuisance claims relating to work done on the Mississippi River Gulf Outlet. *In re Katrina Canal Breaches Consol. Litig.*, 647 F.Supp.2d 644 (E.D. La. 2009). There it noted that the closest plaintiff lived three miles from the levee and the canal, precluding a finding that it was a neighbor within the meaning of the statute. *Id.* at 734; *see also Bd. of Comm'rs of S.E. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., LLC*, 88 F.Supp.3d 615, 643–44 (E.D. La. 2015) ("[A]lthough 'neighbor' does not strictly require contiguity between the servient and dominant estates, it does require some level of physical proximity between them.")

Mr. Ashworth shows that his property is approximately 5.1 miles away from Parcel A. Doc. 1, ¶ 20; *see* doc. 2. He asserts no basis under Louisiana statute or jurisprudence as to why he should be considered a "neighbor" to property located such a distance from his own. The court is reluctant to extend the protection of the nuisance statutes to him, particularly when the theory of liability here is based on underground migration of an enormous toxic plume potentially impacting several non-adjacent landowners. Accordingly, the distance is too attenuated for the coverage likely implied by Louisiana's nuisance statutes and the claim should also be dismissed on this basis.

### 4. Motion for More Definite Statement

Finally, International Paper argues that it is entitled to a more definite statement on plaintiff's theories of liability. A motion under Rule 12(e) should only be granted where the petition is so vague that the moving party cannot reasonably be expected to form a responsive pleading. *Guste v. Shell Oil Co.*, 161 F.R.D. 329, 330 (E.D. La. 1995). As shown above, however, Mr. Ashworth has alleged the nature of the contamination at his property and from International Paper's parcel with sufficient specificity to allow International Paper to prepare a response. This motion will also be denied.

## III.
### CONCLUSION

For the reasons stated above, the Motion to Dismiss [doc. 32] will be granted in part and denied in part. The Motion for a More Definite Statement [*id.*] will be denied.

**THUS DONE AND SIGNED** in Chambers on this 17th day of July, 2020.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**