**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

LARRY W. ASHWORTH,

        Plaintiff,

v.                                                    Civil Action No. 2:20-CV-00053

KERR MCGEE CHEMICAL CORP, et al.,          Judge James D. Cain, Jr.

        Defendants.

---

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL**
**OF SETTLEMENT WITH OCCIDENTAL AND ANADARKO**

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ...............................................................................................................1

BACKGROUND .................................................................................................................2

    I.     The Claims Against Occidental and Anadarko............................................. 2

    II.    Relevant Procedural History ........................................................................ 3

    III.   The Settlement ............................................................................................. 5

ARGUMENT ......................................................................................................................6

    I.     The Court Should Grant Plaintiff's Request for Preliminary Approval. ..................... 6

         A.    There is no fraud or collusion behind the Settlement. ....................................... 7

         B.    The complexity, expense, and likely duration of the litigation support
               preliminary approval. ....................................................................... 8

         C.    The stage of the proceedings and the amount of discovery completed ............ 9

         D.    Plaintiff faces formidable obstacles to establishing liability with respect to
               Occidental and Anadarko............................................................... 10

         E.    The Settlement falls within the range of reasonableness................................ 11

         F.    Class Counsel and Plaintiff support the terms of the Settlement. ................... 12

    II.    The Settlement Class Should be Certified for Settlement Purposes Only. ................. 13

         A.    The requirements of Rule 23(a) are satisfied.................................................. 13

1.    The Settlement Class is sufficiently numerous. ................................ 13

2.    Common questions of law or fact exist.................................... 14

3.    Plaintiff's claims are typical of those of the Settlement Class........... 14

4.    Plaintiff is a more than adequate representative of the
      Settlement Class.................................................................. 15

B.    The requirements of Rule 23(b) are satisfied. ................................ 16

1.    Common questions predominate over individual issues.................... 16

2.    A class is the superior method to resolve this controversy. ............... 16

III.   The Proposed Form and Method of Notice to the Settlement Class
       is Appropriate. ................................................................. 17

CONCLUSION.................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................ 12, 14, 15

*Bell Atl. Corp. v. AT&T Corp.*,
  339 F.3d 294 (5th Cir. 2003) .............................................................................. 15

*Clark v. Lomas & Nettleton Fin. Corp.*,
  79 F.R.D. 641 (N.D. Tex. 1978), *vacated on other grounds*, 625 F. 2d 49 (5th Cir. 1980)........ 9

*Durrett v. John Deere Co.*,
  150 F.R.D. 555 (N.D. Tex. 1993)........................................................................ 14

*Faircloth v. Certified Fin. Inc.*,
  2001 WL 527489 (E.D. La. May 16, 2001) .............................................................. 7

*In re Chicken, Antitrust Litig.*,
  669 F.2d 228 (5th Cir. 1982) ............................................................................ 11

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014), *cert. denied sub nom.*
  *BP Expl. & Prod. Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014)................. 6, 7

*Libersat v. Sundance Energy, Inc.*,
  978 F.3d 315 (5th Cir. 2020) ............................................................................ 10

*Mullen v. Treasure Chest Casino, LLC*,
  186 F.3d 620 (5th Cir. 1999) ........................................................................ 13, 14

*Pederson v. La. State Univ.*,
  213 F.3d 858 ........................................................................................... 13

*Phillips v. Joint Legislative Comm. on Performance & Expenditure Rev. of State of Miss.*,
  637 F.2d 1014 (5th Cir. 1981) .......................................................................... 14

*Schwartz v. TXU Corp.*,
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ......................................................... 11

*Shipes v. Trinity Indus*,
  987 F.2d 311 (5th Cir. 1993) ........................................................................... 14

*Smith v. Crystian*,
  91 Fed. App'x. 952 (5th Cir. 2004), *cert. denied sub nom Crystian v. Tower Loan of*
  *Mississippi Inc.*, 543 U.S. 1089 (2005) .................................................................. 6

*Turner v. Murphy Oil USA, Inc.*,
  472 F. Supp. 2d 830 (E.D. La. 2007) ............................................................ 11

*U.S. v. Texas Educ. Agency*,
  679 F.2d 1104 (5th Cir. 1982) ...................................................................... 7

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .................................................................................. 14

*Zeidman v. J. Ray McDermott & Co.*,
  651 F.2d 1030 (5th Cir. Unit A July 1981) ............................................... 13

**Rules**

Fed. R. Civ. P. 23 ...................................................................................... Passim

**Other Authorities**

*Manual for Complex Litigation* § 21.632 (4th ed. 2004) .............................. 6

William B. Rubenstein, et al., *Newberg on Class Actions* § 13:10 (6th ed. 2023) ........................ 6

## INTRODUCTION

Plaintiff Larry W. Ashworth ("Plaintiff" or "Ashworth") seeks preliminary approval of a settlement reached in this case between Plaintiff, on behalf of himself and all Settlement Class Members, and Defendants Occidental Petroleum Corporation ("Occidental") and Anadarko Petroleum Corporation ("Anadarko").

Pursuant to the Settlement, Occidental and Anadarko have collectively agreed to pay $3.5 million into a Settlement Fund to be used on behalf of Plaintiff, other clients of Class Counsel who are currently part of the proposed Settlement Class, and Settlement Class Members for hard costs ranging from copying costs, travel expenses, deposition costs, expert and consulting fees, and gathering medical records, among other litigation costs, that are the clients' ultimate responsibility to pay associated with this Action to date and going forward.  **No attorneys' fees will be taken out of the Settlement Fund**.  Moreover, any money remaining in the Settlement Fund after the Action has been resolved will not revert to Occidental or Anadarko.  Rather, if any money remains in this particular Settlement Fund after the Action has been resolved, it will be distributed to Settlement Class Members by Class Counsel in a manner approved by the Court at a later date. Occidental and Anadarko have also agreed to pay certain settlement costs and voluntarily dismiss their appeal of an order denying Occidental and Anadarko's motion to enforce an injunction that they contend bars the claims asserted in this Action.  In exchange, the Settlement Class will (i) dismiss with prejudice the claims of Settlement Class Members against Occidental and Anadarko, (ii) release any and all claims the Settlement Class might have against Occidental and Anadarko (and certain related parties) concerning the contamination at issue in this Action, and (iii) join in or consent to a motion by Occidental and Anadarko to vacate the order of the U.S. District Court

for the Southern District of New York denying Occidental and Anadarko's motion to enforce the injunction they contend bars this Action.

In agreeing to the Settlement, Plaintiff took into account the significant legal and factual uncertainties his claims against Occidental and Anadarko face, including (i) whether Occidental and Anadarko are subject to personal jurisdiction in this Court, (ii) whether his claims against Occidental and Anadarko are barred by an anti-suit injunction, (iii) whether the creosoting operations at issue are a source of surface runoff or contaminated groundwater, and (iv) whether Occidental and Anadarko would be found liable for any injury caused by the creosoting operations at issue.  In addition, Plaintiff considered his ability to achieve complete relief from the remaining, non-settling Defendants against whom Plaintiff believes he has stronger claims based on the anticipated testimony of living witnesses and documentary evidence.  For these reasons and the reasons further explained below, Plaintiff, on behalf of himself and the Settlement Class, has concluded and respectfully submits to the Court that the Settlement represents a fair, reasonable, and adequate result for the Settlement Class.  Plaintiff requests that the Court preliminarily approve the Settlement, authorize notice to the Class, and schedule a final fairness hearing.

## BACKGROUND

### I.    The Claims Against Occidental and Anadarko

Plaintiff alleges damages from historic creosoting operations on two parcels of land, Parcels A and B, in DeRidder, Louisiana.  *See* ECF No. 77 ("First Amended Complaint", "FAC") ¶¶ 5-12).  Plaintiff alleges that in 1918, Shreveport Creosoting Company built a creosoting plant on one of those parcels, Parcel B, and operated a creosote plant on Parcel B for some period prior to 1957.  *See id.* at ¶¶ 5-6.  Plaintiff alleges that International Paper Company acquired the plant on Parcel B in 1957 and operated it until 1963, when it sold the Plant B site to a third party and

creosoting operations at that location ceased.  *Id.* at ¶ 7.  Plaintiff further alleges that around the time it sold the Plant B site to a third party, International Paper began conducting creosoting operations on Parcel A, which continued until 1989.  *Id.* at ¶¶ 8, 11, 12.

Plaintiff alleges that substances used during creosoting operations on Parcel A and/or B seeped into the soil and groundwater and migrated to his property five miles away, causing him damages.  *Id.* at ¶¶18–20.  Plaintiff has sued International Paper and BNSF Railway Company, alleging they are directly responsible for the creosoting operations on both Parcels A and B, in several ways.  *See id.* at. ¶¶ 6-8, 10–12.  Plaintiff has sued Occidental and Anadarko alleging they are:

> [A]ncestors/successors in title to Shreveport Creosoting Company and its parent company American Creosoting Company and therefore are responsible for any and all liabilities with respect to the hazardous chemicals and pollution which was left on Parcel "B" by their predecessors in title . . . .

*Id.* at ¶ 9.  Plaintiff has since learned that no direct predecessor of Occidental and Anadarko ever owned or operated the creosote plant on Parcel B, that Shreveport Creosoting Company allegedly ceased operating the facility in 1945, and that only limited records related to Shreveport Creosoting Company's operation of the facility on Parcel B are publicly available.  *See* Sanders Declaration Ex. 6 (October 5, 1998 Letter from the Adams and Reese Law Firm).[1]

## II.   Relevant Procedural History

On July 13, 2020, Occidental and Anadarko moved to dismiss Plaintiff's Complaint for lack of personal jurisdiction, expressly reserving the right to:  (i) argue that Plaintiff's claims against Occidental and Anadarko are barred by a November 19, 2014 Injunction issued by the

---

[1] "Sanders Declaration" refers to the specified exhibit to the declaration of Perry R. Sanders, Jr. dated September 5, 2023.

Honorable Katherine B. Forrest of the U.S. District Court for the Southern District of New York; (ii) seek appropriate relief for Plaintiff's violation of the Injunction, and (iii) ask this Court to stay consideration of their Motion to Dismiss pending the Southern District of New York's resolution of the dispute over the Injunction.  ECF No. 36.

On July 24, 2020, while Occidental and Anadarko's motion to dismiss remained pending, Occidental and Anadarko filed a Motion to Enforce the Injunction and Hold Ashworth and his Counsel in Contempt in the U.S. District Court for the Southern District of New York, requesting that the court enforce its Injunction, enter an order directing Ashworth to dismiss his claims against Occidental and Anadarko, and hold both Ashworth and his counsel in contempt of the Injunction. *In re Tronox*, Case No. 14-5495, ECF No. 102 ("Motion to Enforce").   On July 30, 2020, Occidental and Anadarko filed a consent motion to stay this case pending the outcome of their pending motion to enforce and any subsequent appeal, which the Court granted on July 31, 2020. ECF Nos. 40, 41.

Occidental and Anadarko's Motion to Enforce was assigned to the Honorable J. Paul Oetken.  On February 19, 2021, Judge Oetken issued an order denying Occidental and Anadarko's Motion to Enforce.  On March 12, 2021, Occidental and Anadarko filed a timely Notice of Appeal of that decision in the U.S. Court of Appeals for the Second Circuit.  *In re Tronox Incorporated*, Case No. 21-627.  On May 10, 2021, Ashworth moved to dismiss the Appeal on the grounds that the Second Circuit lacks appellate jurisdiction.  On September 16, 2021, the Second Circuit entered an order denying Ashworth's motion to dismiss, concluding that the Second Circuit has jurisdiction to hear Occidental and Anadarko's Appeal.  On November 17, 2022, the Second Circuit heard oral argument on the appeal.  No opinion has been issued to date.

On June 7, 2023, having reached an agreement in principle to settle the Action, Anadarko and Occidental filed a consent motion requesting that the Second Circuit defer its decision and hold the Appeal in abeyance pending approval of this Settlement, which the Second Circuit granted on June 8, 2023.  Occidental and Anadarko's motion to dismiss for lack of personal jurisdiction remains pending before this Court.

### III.    The Settlement

The terms of the proposed Settlement are set forth in the Settlement Agreement.  Sanders Declaration Ex. 1 ("Agreement").  In short, the Settlement Agreement requires Occidental and Anadarko to (i) pay $3.5 million into Plaintiffs' Counsel's escrow to fund actual litigation costs (with no attorney fees being requested or taken from said amount), and (ii) pay certain settlement administration costs.  *Id.* at §§ 6.1, 8.1.  Occidental and Anadarko further agree to dismiss their pending appeal in the Second Circuit.  In exchange, the Settlement Class agrees to dismiss with prejudice the claims of Settlement Class Members against Occidental and Anadarko in this Action. *Id.* at § 12.1.  The Settlement Class also agrees to release (i) Occidental and Anadarko, (ii) each of their parents, subsidiaries, affiliates, and investors that the Settlement Class has alleged or might allege is a successor to Shreveport Creosoting Company, American Creosoting Company, and/or American Creosoting Corporation, (iii) the predecessors and successors thereof, and (iv) each officer, director, insurer, employee, agent, principal, investor, and attorney of each released corporation or entity from and against any and all claims, actions, causes of action, offsets and liabilities, whether known or unknown, suspected or unsuspected, contingent or matured, which the Settlement Class has had, now has, or may in the future have arising out of or connected in any way with the alleged surface runoff or contaminated groundwater emanating from Parcels A and/or B, but expressly reserving all rights against other defendants to this Action and any of their

5

potentially liable insurers, subsidiaries, affiliates, predecessors, and successors. *Id.* at §§ 1.9-1.11. In addition, Plaintiff agrees to join in or consent to a motion by Occidental and Anadarko to vacate the order of the U.S. District Court for the Southern District of New York denying Occidental and Anadarko's motion to enforce the injunction they contend bars this Action. *Id.* at § 4.3.

## ARGUMENT

A strong judicial policy exists favoring the resolution of disputes through settlement. *Smith v. Crystian*, 91 Fed. App'x. 952, 955 (5th Cir. 2004), *cert. denied sub nom Crystian v. Tower Loan of Mississippi Inc.*, 543 U.S. 1089 (2005). To protect the interests of a putative class, however, Federal Rule of Civil Procedure 23 requires court approval of any settlement entered into on behalf of a certified class. Fed. R. Civ. P. 23(e).

Such approval is a two-step process, the first of which requires preliminary approval. Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement. *Manual for Complex Litigation* § 21.632 (4th ed. 2004). The purpose of preliminary approval is to determine "whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a fairness hearing." William B. Rubenstein, et al., *Newberg on Class Actions* § 13:10 (6th ed. 2023). As approval is only preliminary, courts generally undertake a limited review of the proposed settlement. *Id.*

**I.    The Court Should Grant Plaintiff's Request for Preliminary Approval.**

The gravamen of an approvable proposed settlement is that it be "'fair, adequate and reasonable and is not the product of collusion between the parties.'" *In re Deepwater Horizon*, 739 F.3d 790, 820 (5th Cir. 2014), *cert. denied sub nom. BP Expl. & Prod. Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014). The strenuous litigation to date between the Settling Parties makes clear there is no collusion between the parties. When a settlement is reached as the

result of arms-length negotiations between competent counsel on both sides, the settlement is presumptively valid and "ordinarily may be overcome only if its provisions are not within reasonable bounds or are illegal, unconstitutional or against public policy." *U.S. v. Texas Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982). The Fifth Circuit has established a six-prong test to determine the fairness of proposed settlements: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery, and (6) the opinions of the class counsel, class representatives, and absent class members. *In re Deepwater Horizon*, 739 F.3d at 820. Each of these prongs supports preliminary approval here.

###### A.      There is no fraud or collusion behind the Settlement.

"[T]here is typically an initial presumption that a proposed settlement is fair and reasonable when it is the result of arms-length negotiations." *Faircloth v. Certified Fin. Inc.*, No. 99-3097, 2001 WL 527489, at *4 (E.D. La. May 16, 2001). The Settlement here is the product of extensive arms-length negotiations by informed and experienced counsel knowledgeable about the strengths and weaknesses of Plaintiff's claims and the potential defenses thereto. A settlement was reached only after more than three years of hard-fought litigation, zealous advocacy, and vigorous arms-length bargaining. Lead counsel has many years of experience litigating environmental and class action claims and has negotiated other class settlements and mass tort settlements, in several states in addition to Louisiana, that have all been approved by courts where the cases were settled. The parties were fairly and adequately represented in the course of these proceedings by reputable, unbiased counsel, and there was no collusion. This factor supports preliminary approval of the Settlement.

**B.      The complexity, expense, and likely duration of the litigation support preliminary approval.**

Another reason for the Court to preliminarily approve the proposed settlement is the complexity, duration, and risks of further litigation.  Here, further litigation against Settling Defendants would require additional large expenditures of time pursuing a Defendant that for the reasons stated herein, is not the main target Plaintiffs' counsel feels should be pursued for the contamination and would entail a significant risk that the Class would obtain a result less beneficial than the Settlement.  The obvious benefit of the Settlement is that a defendant with defenses that have been and will continue to be very expensive to try and overcome, is actually going to help fund the scientific and fact-finding exercise, helping Settling Class Members determine exactly who is liable for damages incurred by the Settling Class.  As we have seen from the vigorous associated litigation in New York, unnecessary extension of the duration of this matter will likely occur if we keep these Settling Defendants in the litigation.

As noted, Occidental and Anadarko have moved to dismiss the claims against them, asserting that the Court lacks personal jurisdiction over them.  That motion remains pending because the claims against Occidental and Anadarko were stayed pending resolution of whether Plaintiff's claims against Occidental and Anadarko are barred by an anti-suit injunction the U.S. District Court for the Southern District of New York entered in 2014.  An adverse decision on the motion to dismiss would significantly increase the cost and complexity of pursuing relief from Occidental and Anadarko because it would require a separate action against them in another jurisdiction.  An adverse decision on the applicability of the anti-suit injunction could preclude altogether any recovery from Occidental and Anadarko.

Even if Plaintiff were to prevail on both issues, pursuing recovery from Occidental and Anadarko would be complicated, expensive, and time-consuming.  Plaintiff would face the

8

challenge of tracing responsibility for historic operations that ceased as early as 1945 through a corporate dissolution, asset sales, corporate mergers and divestitures, and at least one bankruptcy. Discovery of these matters has yet to begin and would consume substantial resources without any certainty of recovery.

Following discovery, the parties would then brief summary judgment and prepare for trial. The costs and risks associated with litigating this Action against Occidental and Anadarko to a verdict, not to mention through the inevitable appeals, would be substantial, and the process would require hundreds of hours of this Court's time and resources. *See Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651 (N.D. Tex. 1978), *vacated on other grounds*, 625 F. 2d 49 (5th Cir. 1980) (noting that the expense of trial can be "staggering," and carries with it the "distinct possibility" that the trial will result in no recovery). If taken to trial, the claims against Occidental and Anadarko could easily require an additional 2 years (or more) before a recovery, if any, was obtained for the Class. While this is worth it in pursuing lead target defendants, settlement is the logical approach with these defendants. This factor supports preliminary approval of the settlement.

### C.    The stage of the proceedings and the amount of discovery completed

Although the claims against Occidental and Anadarko in this Action have been stayed since shortly after this Action was filed, Class Counsel has gathered significant information about the corporate lineage of Occidental and Anadarko during the course of the parties' active litigation in the Southern District of New York and Second Circuit over the past three years. Class Counsel also has conducted a thorough factual investigation into the claims asserted in the Petition, including review of publicly available information provided by the Louisiana Department of Environmental Quality, review of the properties which are the sources of the contamination (the "Properties), and interviews with people who worked at the Properties. Thus, by the time settlement

discussions began, Class Counsel understood the strengths and weaknesses of Plaintiff's claims, both legally and factually and was able to engage in a rigorous negotiation process with Defendants. This factor supports preliminary approval of the settlement.

### D.     Plaintiff faces formidable obstacles to establishing liability with respect to Occidental and Anadarko.

As in every complex case of this kind, Plaintiff and the Settlement Class face significant obstacles to recovery, both with respect to liability and damages.  With respect to Occidental and Anadarko in particular, Plaintiff recognizes that he faces significant hurdles unique to the claims asserted against those parties.  Both Occidental and Anadarko argue they are not subject to personal jurisdiction in this Court.  To establish personal jurisdiction, Plaintiff must succeed in establishing that Occidental and Anadarko are successors to Shreveport Creosoting Company, which apparently dissolved in 1955, or its parent American Creosoting Company, which apparently sold its assets to an unrelated entity named American Creosoting Corporation in 1956.  Efforts to establish that Occidental and Anadarko are successors to Shreveport Creosoting Company and/or American Creosoting Company, even if successful, may not suffice to subject Occidental and Anadarko to personal jurisdiction in this jurisdiction.  *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 320 (5th Cir. 2020) (finding a successor corporation did not have sufficient contacts with Louisiana for the court to find specific personal jurisdiction).  The issue of whether the 2014 injunction bars Plaintiff's claims remains on appeal before the Second Circuit, which previously upheld the applicability of the injunction to bar claims arising from contamination emanating from another creosote plant in Avoca, Pennsylvania.

Plaintiff has had difficulty identifying surviving witnesses able to testify about Shreveport Creosoting Company's operation of the creosote plant on Parcel B before 1945, and Plaintiff's efforts to locate relevant documents have had limited success.  The limited availability of

10

such evidence will impede Plaintiff's efforts to prove that Occidental and Anadarko's alleged predecessors failed to exercise reasonable care and/or acted recklessly.  Plaintiff also anticipates substantial challenges in proving that the contamination discovered on his property in 2018 is traceable to the operations of Shreveport Creosoting Company.  This factor supports preliminary approval of the settlement.

> ### E.     The Settlement falls within the range of reasonableness.

The determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum.  Rather, in any case there is a range of reasonableness with respect to a settlement. To assess the reasonableness of a proposed settlement seeking monetary relief, an inquiry "should contrast settlement rewards with likely rewards if case goes to trial." *In re Chicken, Antitrust Litig.*, 669 F.2d 228, 239 (5th Cir. 1982).

Under the proposed settlement, the Class will receive $3.5 million for hard costs associated with prosecuting the case against the remaining defendants.  Hard costs are contractually (with the 700+ or so clients who have retained Class Counsel) and legally (under all class settlements Class Counsel has participated in) the responsibility of the Class members.  It is of particular note that this money will all belong to the Settlement Class to pay hard costs associated with litigation costs of current Settlement Class Members with **no attorney fees being taken out.** This a substantial amount given the challenges outlined above.  Although the settlement amount is theoretically less than the damages Class members might recover at trial, the proposed Settlement is prudent in light of the significant risks of trial, and because it will fund Plaintiff's pursuit of claims against the remaining Defendants against whom Plaintiffs' Counsel has live and documentary evidence, a factor which must be taken into account in evaluating the proposed Settlement with Occidental and Anadarko.

Plaintiff respectfully submits, that considering the risks of continued litigation, and the time and expense that would be incurred to prosecute the action through trial and appeals, the Settlement represents a significant recovery that clearly falls within the range of reasonableness.

**F.    Class Counsel and Plaintiff support the terms of the Settlement.**

"Counsel are the Court's 'main source of information about the settlement' . . . and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007). "[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'" *Schwartz v. TXU Corp.*, Case No. 3: 02-CV-2243-K, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005). Here, Class Counsel has considerable experience in complex litigation including class actions and believes the settlement should be approved. Plaintiff also supports the proposed settlement.[2] Accordingly, this factor weighs in favor of preliminary approval.

****

For all of the foregoing reasons, Plaintiff respectfully submits that the proposed settlement falls within the range of what could be found to be fair, reasonable, and adequate and warrants this Court's preliminary approval.

---

[2] The Settlement Class has not yet had the opportunity to review the terms of the Settlement. Therefore, Class Counsel will advise the Court of the Settlement Class Members' reactions to the Settlement following completion of the Class Notice process, as part of the analysis presented in support of final approval.

## II.     The Settlement Class Should be Certified for Settlement Purposes Only.

One of the Court's functions in reviewing a proposed settlement of a class action is to determine whether the action may be maintained as a class action under Fed. R. Civ. P. 23.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-621 (1997).  Rule 23(a) enumerates four prerequisites to class certification: (i) "numerosity," (ii) "commonality," (iii) "typicality," and (iv) "adequacy" of representation.  *See id.* at 613.  Although, for the purposes of this motion the Court need only determine that class certification for settlement purposes is likely, each of the requirements for 23(a) is readily met.

### A.  The requirements of Rule 23(a) are satisfied.

#### 1.  *The Settlement Class is sufficiently numerous.*

The first element of the four-part threshold for class certification requires that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). The size of the Class is not yet known[3], but it includes at least the 735 putative Class Members who have already registered with Class Counsel (Sanders Declaration ¶ 2).  In determining numerosity, the exact size of the Class need not be known so long as general knowledge and common sense indicate that the class is large.  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) ("Although the number of members in a proposed class is not determinative of whether joinder is impracticable [] the size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement.")  Here, there are at least 735 putative

---

[3] The First Amended Complaint defines the Class as "persons exposed to creosote contamination within the Geographical Boundaries historically" (FAC ¶ 50), which are illustrated in Exhibit 5 thereto.  Exhibit 5 is referenced in the Settlement Agreement and attached both to (i) Plaintiff's Motion to Amend the Complaint as Exhibit D (ECF 67), and (ii) the accompanying Sanders Declaration as Exhibit 11.

Class Members, which makes joinder impracticable.  Numerosity is satisfied. Further, "courts must not focus on sheer numbers alone." *Pederson v. La. State Univ.,* 213 F.3d 858, 868 n. 11 (5th Cir.2000).  The Court must also consider "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir. Unit A July 1981).  These factors too support certifying this as a class action.

### 2.   *Common questions of law or fact exist.*

Rule 23(a)(2) is satisfied where there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality does not require a showing that the interests and claims of the class members are identical; it requires only that a class claim "depend upon a common contention . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

The commonality requirement is satisfied here because the interests and claims of the class members derive from the same factual contention: that Defendants' tortious behavior—including but not limited to improperly handling and storing toxic chemicals, negligently allowing toxic chemicals to leach into the ground, and failing to remediate the contamination—caused Plaintiff and all members of the Settlement Class to suffer damages, which can be resolved through a joint (class wide) resolution.

### 3.   *Plaintiff's claims are typical of those of the Settlement Class.*

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).   Typicality does not require that the interests of the named representatives and the class members be identical.  *See Phillips v. Joint Legislative Comm. on Performance & Expenditure Rev. of State of Miss.*, 637 F.2d 1014, 1024

14

(5th Cir. 1981).  Here, Plaintiff's claims arise from the same course of conduct by the Defendants and are predicated on the same legal theories as the claims of all other Class Members.  The typicality requirement of Rule 23(a) is, therefore, met. *See Durrett v. John Deere Co.*, 150 F.R.D. 555, 558 (N.D. Tex. 1993); *see also Shipes v. Trinity Indus*, 987 F.2d 311, 316 (5th Cir. 1993) (test for typicality, like commonality, is not demanding).

### 4. *Plaintiff is a more than adequate representative of the Settlement Class.*

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem*, 521 U.S. at 625. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625–26 (5th Cir. 1999) ("Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests.").

Plaintiff Ashworth has no conflicts of interest with the other members of the putative class. Ashworth lives on a property in the impacted area, and has been impacted by the toxic plume contamination, much as other class members have been.  He became aware of the contamination under and on his property after witnessing dark colored thick liquid coming from the ground after disturbing the ground by the extraction of a tree stump.  Like the rest of the putative class, Mr. Ashworth faces additional health risks due to the contamination that is the basis of this litigation. Mr. Ashworth's damages resulted from the same contamination as the members of the putative class.  For these reasons, Mr. Ashworth is an adequate representative of the Settlement class.

Because Plaintiff is an adequate representative of the Settlement Class, and his counsel is qualified, experienced, and capable of prosecuting this Action, the requirements of Rule 23(a)(4) are satisfied.

**B.      The requirements of Rule 23(b) are satisfied.**

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Rule 23(b).  Certification of a class under Rule 23(b)(3) requires that: (1) common issues predominate over individual issues; and (2) the class action mechanism is superior to other methods of adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

### *1.  Common questions predominate over individual issues.*

Determining whether common questions predominate over individual issues "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) (quotation marks and citation omitted). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem* 521 U.S. at 623.  Here, that analysis establishes that this action must be brought as a class action.  Each putative class member has suffered damages caused by Defendants' same tortious actions: including allowing toxic chemicals to leach into the ground and failing to properly remediate.  This common issue forms the basis for this action and will predominate any potential individual issues.

### *2.  A class is the superior method to resolve this controversy.*

The Court must consider several factors to determine whether a class action is the superior method of adjudicating a matter: (i) the interests of class members in individually controlling the litigation of their own cases; (ii) the extent and nature of other litigation involving the same issues; (iii) the desirability of concentrating the litigation in this forum; and (iv) any difficulties that may be encountered in managing a class action.  Fed. R. Civ. P. 23(b)(3).  Here, each factor mitigates in favor of trying this action as a class action.

A class for settlement purposes only, is the superior method to resolve this controversy with this defendant, because of the number of putative class members whose damages derive from Defendants' same alleged tortious acts and can be resolved through a joint (class wide) resolution. The sheer volume of putative class members would make this litigation impracticable to resolve through individual litigations or settlement agreements and would not carry the same benefit to all putative class members or Settling Defendants. It is in the interests of the putative class members that this action be settled as a class action.

This portion of this action should be settled as a class in the U.S. District Court for the Western District of Louisiana. This forum is where Defendants' tortious actions occurred, and it is where most of the damages accrued. Many putative class members continue to reside in this region of Louisiana.

There are factors that make every class action difficult to manage, and eliminating these defendants through the class mechanism will help inform the Court's future decisions on whether or not to certify the proposed class action, or some amended version of it.

## III.    The Proposed Form and Method of Notice to the Settlement Class is Appropriate.

Rule 23(e) requires that the court direct notice in a reasonable manner to all class members who would be bound by the Settlement. A proper notice should include (i) "the nature of the action"; (ii) "the definition of the class certified"; (iii) "the class claims, issues, or defenses"; (iv) notice that "a class member may enter an appearance through an attorney if the member so desires"; (v) notice that the "court will exclude from the class any member who requests exclusion"; (vi) "the time and manner for requesting exclusion"; and (vii) notice of "the binding

17

effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B); Manual for Complex Litigation, *supra*, § 21.312.

Here, the proposed Class Notice provides information on all of these subjects and informs Settlement Class Members of their rights under the Settlement as well as their right to be heard at the final fairness hearing. *See* Sanders Declaration Ex. 2. The Notice includes sufficient information about this litigation and directs class members to additional resources.

Class Counsel has retained a Notice Administrator, Marshall J. Simien, Jr., of the Simien Law Firm. Mr. Simien plans to identify the addresses of properties within the proposed geographical boundaries of the Settlement Class and will send each member of the Settlement class the Class Notice of the Settlement by direct mail. Mr. Simien will also arrange notice of the Settlement via publication in both local and national newspapers likely to reach as many class members as possible and will be provided all of Class Counsel's signed up clients' addresses to directly mail. This notice program fulfills the requirements of due process by alerting and informing the members of the Class who can be identified through reasonable efforts of this Settlement.

## **CONCLUSION**

For the forgoing reasons, the Court should grant Plaintiff's motion to preliminarily approve the proposed Settlement, approve the proposed Class notice, authorize its distribution to the Settlement Class, and set deadlines as set forth in Plaintiff's motion.

Dated: September 5, 2023                          Respectfully submitted,

*/s/ Perry R. Sanders, Jr.*
Perry R. Sanders, Jr.
The Sanders Law Firm
31 N. Tejon, Suite 400
Colorado Springs, CO 80903
perry@perrysanders.com
Tel. 719.630.1556
Fax 719.630.7004

David L. Wallace
518 North Pine Street
Post Office Box 489
DeRidder, LA 70634
wnblawoffice@bellsouth.net
Tel. 337.462.0473
Fax 337.202.4070

Andrew K. Glenn
Glenn Agre Bergman & Fuentes LLP
1185 Avenue of the Americas, 22nd Floor
New York, NY 10036
aglenn@glennagre.com
Tel. 212 970-1600

*Counsel for Plaintiff Larry W. Ashworth*