UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LARRY W. ASHWORTH | * | CIVIL CASE NO. 2:20-CV-00053 |
| | * | |
| VERSUS | * | JUDGE JAMES D. CAIN, JR. |
| | * | |
| INTERNATIONAL PAPER COMPANY, ET AL | * | MAGISTRATE JUDGE KATHLEEN KAY |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## IP'S SUR-REPLY MEMORANDUM IN RESPONSE TO PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

International Paper Company submits this Sur-Reply Memorandum in Response to Plaintiff's Reply Memorandum in Further Support of Motion for Preliminary Approval of Settlement (ECF 128-2).

The Court should consider *once* whether to certify Plaintiff's proposed class and should do so based on evidence adduced at an adversarial hearing in which all interested parties participate. This path forward is fair, efficient, and necessary to avoid the legal prejudice IP will suffer if it is excluded from the class certification process.

Plaintiff has presented no evidence that contaminated groundwater migrated beyond the creosoting plants, and certainly none that proves that contaminated groundwater reached the property of Mr. Ashworth or any putative class member. And the EPA reports already in the record prove that there never will be any such evidence. Further, Plaintiff has presented no evidence to support class certification. The owners of the two land parcels contiguous to the Shreveport Creosoting site are the only plausible plaintiffs. Assuming *arguendo* that these two landowners desire to and can sue, their claims, as do all the putative class claims, present predominantly

1

individual issues. And, again, the EPA reports already in the record prove that there will never be any evidence satisfying the numerosity and predominance requirements for class certification.

## I. THE COURT SHOULD STRIKE PLAINTIFF'S REPLY MEMORANDUM.

Plaintiff's Reply Memorandum (ECF 128-2) contains **25 pages of new content**. The Court should strike Plaintiff's Reply Memorandum because it flouts bedrock Fifth Circuit (if not universal) precedent prohibiting the raising of new arguments for the first time in a reply. *E.g., Thompson v. Link*, 2022 WL 175547 (5th Cir. Jan. 15, 2022). At the very minimum, the Court should grant IP an adequate opportunity to respond to Plaintiff's new arguments by accepting IP's Sur-Reply incorporated herein. *Redhawk Holdings Corp. v. Schrieber*, 836 F. App'x 232, 235 (5th Cir. 2020).

## II. NEITHER THIS CASE, NOR PLAINTIFF'S CLASS CERTIFICATION BID, HAVE ANY BASIS IN FACT.

Plaintiff's Reply Memorandum doubles down on the false allegation in his Amended Complaint that contaminated groundwater migrated from the Shreveport Creosoting and IP creosoting plants to his property five miles away. ECF 77 at 1-2; ECF 105-1, at 3.

"In weighing certification, the court will often have to probe behind the pleadings because the class determination generally involves considerations that are enmeshed in the factual and legal issues of the case." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 546 (5th Cir. 2020) (citations, alterations, and internal quotation marks omitted). The court should seek to "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination[.]" *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020).

Plaintiff has not presented any evidence contaminated groundwater migrated offsite, much less that it travelled 5.1 miles, uphill,[1] to Plaintiff's property. **No laboratory report, no expert report, nothing**. More importantly, Plaintiff's own arguments have disproved his own claim (and the claims of the putative class). Plaintiff attached the EPA reports to his Reply Memorandum (ECF 128-7, 8, and 9) and referenced them in his Amended Complaint (ECF 77 at 21-22). These EPA reports and the other evidence detailed in IP's Opposition (ECF 122 at 2-3) prove that there has been no migration of contaminated groundwater from the Shreveport Creosoting and IP sites. *None*. The only "authority" cited by Plaintiff for the proposition that contaminated groundwater soiled his or any putative class plaintiff's property are his allegations in his Amended Complaint. ECF 128 at 3. Plaintiff cites himself, ***and only himself***, for his groundwater contamination claim, proclaiming that what he has alleged simply must be true. ECF 128-2 at 3.

Plaintiff's other "proof" does not help his cause. Plaintiff attached to his Reply Memorandum documents pertaining to three 30+ year-old complaints about odors from the IP plant – from 1985, 1986, and 1992. ECF 128-12, 13, and 16. These documents reveal that LDEQ promptly investigated and closed all three complaints, without finding an air pollution violation. With respect to the 1985 complaint, LDEQ observed the "slight" odor resulted in "No Violation". ECF 128-12. With respect to the 1986 complaint, LDEQ found that "There were creosote odors throughout the plant, but not in an excessive amount," and that IP "appeared to be in compliance

---

[1] Although the reader would not know it from the discussion in Plaintiff's Reply Memorandum, Plaintiff's counsel dons a hydrologist's hat and paraphrases a discussion of artesian wells to make Plaintiff's impossible claim of water flowing uphill seem plausible. ECF 188-2, at 12 and 12 n. 12. Plaintiff's counsel's argument is entitled to no weight because: (1) Plaintiff's counsel has not qualified himself as an expert, and cannot testify in any event; (2) the EPA has undisputedly found, as Plaintiff's exhibits demonstrate, that contaminated groundwater did not migrate off the Shreveport Creosoting site, ECF 122 at 2-3; and (3) IP's expert confirms both that contaminated groundwater did not migrate off the IP site and could not have climbed the hill to Plaintiff's property even if it had migrated offsite, *id*. at 3-4.

with applicable Louisiana Air Quality Regulations." ECF 128-16. Plaintiff also submitted (1) IP's 1971 response to the Louisiana State Air Control Commission's "Emission Inventory Questionnaire"; and (2) a 1974 EPA Notice of Violation by IP of Louisiana's "smoke control regulations" by a wood waste burner. ECF 128-14, 15. Like the three odor complaints discussed above, IP's Questionnaire Response and the EPA Notice pertain to *air* emissions issues, and, on their face, do not support – indeed, have absolutely nothing to do with – the non-existent groundwater contamination on which Plaintiff bases his and the putative class's claims.

Next, Plaintiff's counsel grossly misrepresents a 1979 Hazardous Waste Notification Form submitted by IP to the Louisiana Department of Natural Resources. ECF 128-5. On its face, this Notification Form confirms that IP treated, stored, and disposed of plant wastes *onsite*, and provides no support for Plaintiff's claims of *offsite* contamination. Further, Plaintiff's counsel wildly misrepresents the contents of the Notification Form by overstating the amount of K001 sludges ***by over 400,000 times.*** Plaintiff's counsel asserts there were 11,567,595 tons of K001 sludge (ECF 128 at 5 n. 4) whereas the Notification Form states on its face that the number was only 28.9 tons. ECF 128-5 at 3. Plaintiff's Reply Memorandum repeats this exaggerated claim numerous times.[2]

Finally, Plaintiff offers the deposition testimony of Mr. Buckley and Mr. Burton, two former laborers who worked for IP in the 1980s. ECF 128 at 9-11. The Court permitted their depositions at Plaintiff's instance as exceptions to the stay that has otherwise been in force since

---

[2] This is, of course, one of many instances where Plaintiff has played fast and loose with the facts. For example, Plaintiff's Reply Memorandum, citing his Amended Complaint, asserts that "Parcel B was 'declared a Super Fund' by the EPA in 1991. ¶ 28." ECF 128-2, at 5. In fact, Parcel B was not declared a Superfund site until 2018, 27 years later. ECF 122-2.

4

July 31, 2020. ECF 41, 76. To date, the parties have not made voluntary disclosures and have not otherwise been permitted to conduct discovery. *Id*.

Messrs. Buckley and Burton testified, unsurprisingly, that there was lots of creosote at the IP site and that it smelled like creosote. Such testimony does not a class action make. After all, IP ceased creosoting operations at the IP site decades ago.

Mr. Buckley further testified, remarkably and implausibly, that his childhood home almost a mile from the IP site flooded about 40 years ago and was filmed with creosote up to a height of three feet. Because this case has been stayed, IP has had no opportunity to vet Mr. Buckley's testimony. However, Plaintiff has produced no laboratory reports, no incident reports, no expert reports, and no other documentation to corroborate Mr. Buckley's untenable anecdote. But the Court need not be concerned about this. Mr. Buckley's testimony is disproved by the decades of monitoring by IP, LDEQ, and EPA which show that contaminated groundwater has not migrated off the Shreveport Creosoting and IP sites and therefore could not have contaminated plaintiff's childhood home or any other site. ECF 122 at 7-10. Moreover, his testimony does not prove that even one other person was exposed to contaminated groundwater from the IP and Shreveport Creosoting sites and does not support the more than 50 square mile class area including almost 11,000 class members proposed by Plaintiff. ECF 77 at 25-26, Exhibit 5; ECF 105, 105-2 at 15 n.3; and ECF 105-13. Finally, it would be wholly inappropriate to certify a class action based on the patently incredible and uncorroborated testimony of interested witnesses which was preserved during a period when IP's discovery hands were otherwise tied by the stay.

In sum, the record, including the EPA reports which Plaintiff has embraced, show that there are two plausible putative plaintiffs – the owners of the Eastern and Western Offsite Areas contiguous to the Shreveport Creosoting site. ECF 122 at 8. Rule 23(a) numerosity is not satisfied

by two plaintiffs. ECF 122 at 16-17. That Plaintiff's counsel has signed up (or in his parlance "registered", ECF 105-2 at ¶2) 735 plaintiffs – or even every one of the 4.6 million residents of Louisiana – is of no moment if none of them have colorable claims. *Id.*[3]

Moreover, as explained in IP's opposition, Plaintiff cannot satisfy Rule 23(b)(3) predominance. *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 378 (5th Cir. 2016); *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *Earl v. Boeing Co.*, 21 F.4th 895, 898 (5th Cir. 2021). Occidental's and Anadarko's predominance argument fails because they cite no law. ECF 125 at 6. Plaintiff takes the settling defendants' failure to cite authority for their position at least two steps further, by (1) misstating the law – asserting, falsely, that "even a single common question will do" to satisfy Rule 23(b) predominance – and (2) supporting his misstatement with a bogus citation attributing that misstatement to IP. ECF 128 at 24. A single issue may suffice for 23(a) commonality, *Dukes*, 564 U.S. at 369, but not 23(b) predominance, *Amchem Prod.*, 521 U.S. at 623-24. IP has never stated otherwise.

### III. THE COURT MUST STRICTLY SCRUTINIZE THE CLASS CERTIFICATION REQUIREMENTS; MERE CONSENT OR COLLUSION IS NOT ENOUGH.

#### A. There is no "certification lite" for settlement classes.

This Court "lack[s] authority to substitute for Rule 23's certification criteria a standard never adopted – that if a settlement is 'fair,' then certification is proper." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 622 (1997).

---

[3] Plaintiff's own exhibits reveal the appalling and indefensible falsity of his repeated statements that "International Paper's creosoting operations generated **tens of billions of pounds of toxic creosote waste** in any given year, toxic creosote waste was **visually apparent** all over, outside of, and, indeed, **several miles away from International Paper's creosoting operations, resulting in a constant and nauseating odor**". ECF 128-2, at 2 (emphasis in original); ECF 128-2, at 22.

6

### B. The settling parties cannot achieve class certification by consent or collusion.

It is not enough that both sides may have stipulated to certification, because "the court is bound to conduct its ***own*** thorough Rule 23(a) inquiry." *Izzio v. Century Golf Partners Mgmt., L.P.*, 670 F. App'x 348, 349-50 (5th Cir. 2016) (emphasis in original) (citing *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 n.7 (5th Cir. 2002)). Plaintiff cannot simply make up facts or rely on the allegations in his complaints to meet Rule 23(a) and 23(b) class certification requirements. "Rule 23 does *not* set forth a mere pleading standard." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)) (emphasis added). "The judge cannot merely 'review a complaint and ask whether, taking the facts as the party seeking the class presents them, the case *seems* suitable for class treatment.'" *Id.* at 546 (quoting *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011)) (emphasis added); *see also Tellis v. LeBlanc*, No. CV 18-541, 2021 WL 4267513, at *2 (W.D. La. Sept. 20, 2021). "Much more is needed." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 546 (5th Cir. 2020).

### C. The Court must strictly scrutinize certification requirements.

In fact, when certifying a class for settlement purposes, the Court has an ***independent and heightened*** duty to determine whether the facts and evidence presented meet class certification requirements. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2013 WL 10767663, at *17 (E.D. La. Dec. 24, 2013), *aff'd sub nom*, *In re Deepwater Horizon*, 744 F.3d 370 (5th Cir. 2014) (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 334 (3d Cir. 2011) (Scirica, J., concurring) ("[I]nquiries assume heightened importance and heightened scrutiny")). "[W]ith or without a settlement on the table," the Court cannot certify a class which "does not satisfy Rule 23's requirements." *Amchem Prod.*, 521 U.S. at 622.

## IV. IP HAS STANDING TO OBJECT.

A non-settling defendant can oppose the proposed settlement if its rights would be legally prejudiced by the settlement's approval. *See, e.g.*, *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1164-65 (5th Cir. 1985). IP will be legally prejudiced by the proposed class certification.

First, the proposed settlement class certification legally prejudices IP because IP is in the class definition and because plaintiff asks the Court to inform the almost 11,000 residents of DeRidder that "**There IS A STRONG FACTUAL BASIS to show that [IP] substantially caused the extensive contamination within the proposed class area.**" ECF 105-4 at 1 (emphasis in original). The proposed class notice also repeatedly refers to alleged contamination from the "International Paper DeRidder Creosote Site." ECF 105-4 at 2. Plaintiff requests certification of a class of "individuals who might assert a claim … based on alleged surface runoff or contaminated groundwater alleged to emanate from … the International Paper DeRidder Creosote Site." ECF 105 at 3. As evidence in favor of class certification, Plaintiff offers the Court documentation regarding IP's wood preserving activities and IP's interactions with state and federal regulatory authorities. ECF 128-5; ECF 128-12; ECF 128-13; ECF 128-16.

Second, IP will be legally prejudiced because the exclusion of its objections to the proposed settlement class certification will lead to inconsistent or distorted class certifications. For class certification, the Court must find as fact that there are sufficiently numerous colorable claims whose common issues predominate. *Dukes*, 564 U.S. at 363. Because the definition of the proposed settlement class includes IP, the numerosity and predominance issues are identical whether certification is for the proposed settlement or for litigation. However, as demonstrated above, the settling parties have agreed to present a version of the "facts" to the Court that differs vastly from what appears in the EPA records and from what will be presented by IP. Thus, Plaintiff's proposed

8

class certification forces the Court to decide the same questions (class definition, numerosity and predominance) two times on different records. The inexorable result will be inconsistent or distorted factual findings, with the first findings almost certainly having undue influence upon and perhaps taking precedence over the second.

Third, IP's plight amounts to sufficient legal prejudice to require the Court to consider its objection to class certification under *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1093 (5th Cir. 1977). The non-settling defendants in *In re Nissan* were not allowed to object to the merits of the proposed settlement but were allowed to object to a proposed class notice that lacked "objective, neutral terms" and "prejudice[d] the rights of nonsettling defendants." *Id.* at 1106. The non-settling defendants objected that the proposed notice constituted "a virtual advertisement for the assertion of claims from which one would conclude that the litigation had considerable merit, and the recipient could expect a substantial recovery from [the non-settling defendants] at a later date." *Id.* at 1103 (internal quotation marks omitted). Here, the proposed class description and proposed notice would legally prejudice IP because they repeatedly reference alleged contamination by IP. The proposed notice goes even further, stating in bold capitalized letters: "**There IS A STRONG FACTUAL BASIS to show that [IP] substantially caused the extensive contamination within the proposed class area.**" ECF 105-4 at 1.

## V. THE COURT SHOULD SCHEDULE AN ADVERSARIAL CLASS CERTIFICATION HEARING.

The obvious, fair, and efficient path forward is for the Court to conduct an adversarial class certification hearing at which all parties participate, as did the Court in *Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05CV01108ERW, 2009 WL 4782082, at *10-12 (E.D. Mo. Dec. 8, 2009). The settling parties have no coherent, much less compelling, response to *Schoenbaum* or its recognition that class certification should be supported by evidence adduced by the interested

9

parties in an adversarial proceeding. Occidental and Anadarko relegate their discussion of *Schoenbaum* to a footnote (ECF 125 at 4 n.1). Plaintiff's *Schoenbaum* response rebuts a point that IP has never contested – i.e., that Occidental and Anadarko can spend their money as they see fit. ECF 128-2 at 19-20. IP challenges class certification, not the $3.5 million Occidental and Anadarko propose to spend for a release.

## VI.   CONCLUSION.

For the foregoing reasons, the Court should strike Plaintiff's Reply Memorandum or, alternatively, accept IP's Sur-Reply in Opposition to Plaintiff's Motion for Preliminary Approval.

Respectfully submitted,

FORMAN WATKINS & KRUTZ LLP

*/s/Chelsea G. Favret*
TIM GRAY (Bar No. 31748)
MELISSA D. FULLER (Bar No. 33093)
DANIEL J. MULHOLLAND (Bar No. 38569)
ELIZABETH R. PENN (Bar No. 30667)
CHELSEA GAUDIN FAVRET (Bar No. 37692)
201 St. Charles Ave., Suite 2100
New Orleans, LA 70170
Telephone: (504) 799-4383
Facsimile: (504) 799-4384
LAEService@formanwatkins.com

*Counsel for International Paper Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all known counsel of record. A copy has also been served on all known counsel of record and/or any unrepresented party not enrolled in the CM/ECF system by U.S. Mail, certified mail, fax, e-mail, and/or hand delivery.

                                                                        /s/*Chelsea G. Favret*