UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**LARRY W ASHWORTH**   **CASE NO. 2:20-CV-00053**

**VERSUS**   **JUDGE JAMES D. CAIN, JR.**

**INTERNATIONAL PAPER CO ET AL**   **MAGISTRATE JUDGE CAROL B. WHITEHURST**

MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 129] filed by defendant BNSF Railway Company, seeking dismissal of all claims against it in this putative class action filed by plaintiff Larry Ashworth. Ashworth opposes the motion. Doc. 143.

I.
BACKGROUND

This suit arises from alleged groundwater contamination at two creosoting facilities in Beauregard Parish, Louisiana. Specifically, Ashworth asserted that his property was contaminated by facilities located about five miles away and owned, respectively, by Shreveport Creosoting Company and International Paper Company.[1] Doc. 77. The former was classified as a Superfund Site by the EPA in 2018. *See* doc. 126, att. 7 (Remedial Investigation Report). Plaintiff also alleged that contamination resulted from the storage and/or transfer of creosoting products from these sites by BNSF Railway Company.

---

[1] Plaintiff alleges that creosoting operations began at a plant constructed on "Parcel B" by Shreveport Creosoting Company around 1918 and lasted until around 1963, when International Paper acquired the site. Doc. 77, ¶¶ 5–7. International Paper then took over Shreveport Creosoting Company's operations and transferred them to "Parcel A," on the north end of International Paper's property in Beauregard Parish. *Id.* at ¶ 8. Creosoting operations continued at Parcel A until 1989. *Id.* at ¶ 11.

Accordingly, he filed a complaint in this court against BNSF and International Paper, as well Kerr McGee Chemical Corporation, Kerr McGee Operating Corporation, Anadarko Petroleum Corporation, and Occidental Petroleum Corporation as successors/ancestors in title to Shreveport Creosoting Company and its parent, American Creosoting Company. Doc. 1, ¶ 9. There he also made class allegations on the theory that his land contamination had resulted from a toxic plume that impacted surrounding parcels, causing property damage and personal injury. Accordingly, he defined the proposed class as "at a minimum composed of non-owner residents, home and landowners in the flood plain and subsurface sand and aquifer, between the original sites of contamination and Plaintiff's property." Doc. 1, ¶ 45.

Occidental and Anadarko moved to dismiss the claims against them for lack of personal jurisdiction, reserving their rights to argue that Ashworth's suit violated an injunction issued by the Honorable Katherine B. Forrest of the United States District Court for the Southern District of New York. Doc. 36. Proceedings in this court were stayed upon consent motion of Ashworth, Occidental, and Anadarko. Docs. 40, 41.

Occidental and Anadarko then filed a motion in the Southern District of New York, seeking to enforce the injunction. *See In re Tronox*, No. 1:14-cv-5495, docs. 102, 103 (S.D.N.Y.). There they argued that Ashworth's claims were derivative or duplicative of claims settled by Anadarko in bankruptcy proceedings. The Honorable Paul Oetken, who was assigned the case due to Judge Forrest's retirement, denied Occidental and Anadarko's motion on February 19, 2021. *Id.* at doc. 131. Occidental and Anadarko appealed to the Second Circuit, which heard oral argument on November 17, 2022. *Id.* at doc. 136; *see In*

*re Tronox Inc.*, No. 21-627 (2d Cir.). Since that time, the parties reached an agreement in principle to settle the action and the appeal was stayed on their joint motion. *See* doc. 101.

The undersigned has now lifted the stay in this suit and Ashworth is seeking approval of a settlement class to resolve his claims with Anadarko and Occidental. Meanwhile, BNSF moves for summary judgment on the claims against it. Doc. 129. It asserts that it can have no liability for the alleged contamination because (1) BNSF's ancestor in title to the railroad line at issue did not purchase the right-of-way and tracks until 1975, at least 12 years after operations ceased at the American Creosote site (Parcel B), and (2) plaintiff has no evidence of creosote contamination on the BNSF right-of-way and track adjacent to Parcel A. *Id.* Plaintiff opposes the motion, arguing that it is premature and that plaintiff should be afforded additional opportunity to conduct discovery given the undisputed evidence of contamination at BNSF's branch line. Doc. 143.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

In his amended complaint Ashworth offers the following allegations relating to BNSF's liability:

> BNSF and its predecessors, upon information and belief, owned certain right of ways and land in and near parcels "A" and "B" upon which the creosoting products were stored and/or loaded and transported on railways used and owned by BNSF for commercial sale. BNSF thus had custody and control of such creosoted products which resulted in the toxic and hazardous by-products of the creosoting process, listed below, being spilled, allowed to be leached from storage facilities, or otherwise BNSF allowed the contamination/pollution to be released into the environment on BNSF controlled property from the inception of the creosoting operations/business to its cessation on or about 1989, when IP halted its creosoting operations.

Doc. 77, ¶ 10. It further alleged that IP and BNSF had drilled wells "on the sites in question" and discovered creosote contamination in the soil and water underlying the plant sites, with BNSF having drilled and maintaining "at least 3 monitoring wells in and around Parcels 'A' and 'B.'" *Id.* at ¶ 19. Still, it maintained, defendants (including BNSF), "as well as their predecessors," had done nothing "to stop the migration of the toxic chemicals despite knowing of same and of the source." *Id.* at ¶ 23. BNSF moves for summary judgment as to its liability for contamination from both parcels.

### A. Parcel B Liability

Plaintiff has admitted that creosoting operations ceased at Parcel B in 1963, when IP acquired the site from Shreveport Creosoting Company and moved creosoting operations to Parcel A. *Id.* at ¶¶ 5–8. BNSF's predecessor in title, The Atchison, Topeka and Santa Fe Railway Company ("ATSF"), purchased the railroad branch line running along the western edge of Parcel B and eastern edge of Parcel A from Southern Pacific Transportation Company. Doc. 129, att. 3. On December 30, 1996, ATSF merged into Burlington Northern Railroad Company, which later became BNSF Railway Company. Doc. 129, att. 4; *see* doc. 77, ¶ 1. BNSF sold the branch line to Timber Rock Railroad on May 8, 1998. Doc. 129, att. 5. BNSF thus maintains that it can have no liability for storing or moving creosoted products from Parcel B, because it did not own the branch line for any period of time during which creosoting operations were occurring on that parcel.

Ashworth alleges that BNSF was still liable because it was aware of contamination at both parcels during the time of its ownership but did nothing to remediate or remove the polluted soils and water. Doc. 143. To this end it offers the EPA's Hazard Ranking System

documentation from the American Creosote superfund site in DeRidder, wherein the agency stated:

> The ground water migration pathway has not been scored. Temporary wells located on Central Manufacturing Company (CMC) property and ground water monitoring wells located on Burlington Northern Santa Fe (BNSF) Railroad property have shown elevated levels of total petroleum hydrocarbons (TPHs) and polycyclic aromatic hydrocarbons (PAHs). Based on information available at this time, further evaluation of the ground water migration pathway would not significantly affect the listing decision.

Doc. 143, att. 4, p. 2 (internal citations omitted). Ashworth thus maintains, and intends to seek discovery proving, that discharges continued from land controlled by BNSF due to its knowing failure to remediate and remove the polluted and toxic soils and water.

As BNSF notes, there is nothing in the record to suggest that BNSF had any role in causing the original creosoting contamination at Parcel B or the branch line bordering it. The amended complaint also faults BNSF for failing to stop the migration of toxic chemicals, however. Ashworth has produced evidence suggesting that groundwater contaminants were being monitored at the BNSF site during the period of its ownership. To the extent BNSF was responsible for this monitoring and may have negligently failed to intervene upon notice of groundwater migration, plaintiff may have a cause of action against the company. Accordingly, Ashworth is entitled to additional discovery before the claims arising from Parcel B can be dismissed.

### B. Parcel A Liability

BNSF also moves for summary judgment as to its liability for Parcel A, asserting that there is no evidence of contamination on the railroad right-of-way adjacent to the IP

site. As it shows, all of the EPA exhibits submitted relate to contamination at Parcel B and make no mention of the IP facility, Parcel A, or the railroad property adjacent to it.

Plaintiff relies on the testimony of two former IP employees, which were conducted with leave of court while the case was stayed.[2] William Buckley worked at IP for one to two years in the 1990s, loading creosote-treated poles onto rail cars. Doc. 143, att. 13, pp. 18–19. He testified that the poles were still dripping when he loaded them and that, when it would rain, "you could see the creosote going down the roads, out of the parking lot . . . going across the roads and going on down the roads." *Id.* at 19. He maintained that he could smell creosote from his house, which was two and a half to three miles away from the IP site. *Id.* at 22. Robert Burton, who worked at IP from the 1970s to the late 1980s, was also involved in loading creosote-treated poles onto rail cars. Doc. 143, att. 8, pp. 16–18. He likewise testified that the poles were dripping when he loaded them and that he witnessed creosote on the ground around the IP site. *Id.* at 18–20. Both performed their loading activities at staging tracks inside the IP facility and were unaware of which railroad serviced either the main line track or the staging tracks. Doc. 144, att. 2, pp. 2–4; doc. 144, att. 3, pp. 2–3.

The testimony of these witnesses shows possible creosote contamination at Parcel A, as alleged in the complaint, and through the actions of IP. It does not provide any support for the allegations against BNSF relating to the company's alleged improper storage,

---

[2] Plaintiff sought leave to depose seven witnesses, including Buckley and Burton, during the stay in order to preserve their testimony based on "their current age, health, and/or other circumstances." Doc. 67, att. 4. The court allowed the depositions but ordered that "[n]o further discovery may be conducted in this matter before the parties' scheduling conference without leave of court." Doc. 76, p. 4. The stay was lifted on September 22, 2023, and no scheduling conference has yet occurred.

loading, or transport of creosoted products, or its failure to act after becoming aware of creosote migration from monitoring wells. These specific allegations will need factual support if the claim is to survive. At this stage, however, Ashworth has provided sufficient evidence to refute BNSF's contention that there was no creosote contamination at/near Parcel A. Further discovery is required to develop the rest of its claim. The parties have not had the opportunity to conduct this discovery given the stay imposed on the whole case and on discovery, supra note 2, for the last three years.

### C. Entitlement to Additional Discovery

Under Rule 56(d), a court may defer consideration of or deny a motion for summary judgment when the nonmovant shows "that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d). Motions under this provision "are broadly favored and should be liberally granted." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871–72 (5th Cir. 2006) (referring to the prior version under Rule 56(f)). Still, a plaintiff must show (1) why he needs the additional discovery and (2) how that discovery will create a genuine issue of material fact. *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001). A party is not entitled to relief under this rule if he has not diligently pursued discovery. *Id.*

Ashworth has provided an affidavit from his attorney, asserting that there are a "substantial number of outstanding and unresolved discovery issues" including:

    a. The nature and extent of creosote contamination on Parcel A, Parcel B, and the BNSF Branch line;
    b. When and how Parcel A, Parcel B, and the BNSF Branch line became contaminated;

> c. When BNSF learned that Parcel A, Parcel B, and the BNSF Branch were contaminated;
> d. Whether and for how long the BNSF Branch line continued to be used to store, load, and transport creosoted products from Parcel A after BNSF acquired the BNSF Branch Line in 1975;
> e. Whether BNSF took the necessary and appropriate steps—if BNSF took any steps at all—to prevent, remediate, contain, and remove creosote contaminated soil and water on and beneath the BNSF Branch Line; and
> f. Whether, how, and to what extent creosote contamination migrated off of the BNSF Branch Line impacting the property and health of putative class members.

Doc. 143, att. 2, ¶ 17.

As described above, this discovery bears on unresolved factual issues critical to the claims on which BNSF seeks summary judgment. The case was stayed shortly after its inception, with Ashworth only permitted to take a limited number of depositions in order to perpetuate the testimony of certain witnesses. There has not yet been an opportunity for plaintiff to conduct the required discovery. The court will therefore grant relief under Rule 56(d) by denying the motion, without prejudice to BNSF's right to reassert it. At the same time, to keep matters proceeding on the same track and potentially spare the parties some expense, the court will order that no discovery take place until the court has ruled on International Paper's Motion for Entry of a Lone Pine Order [doc. 136].

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 129] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 3rd day of November, 2023.

_____
JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**