UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ROSE EPPERSON** | **CASE NO. 2:20-CV-00053** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **INTERNATIONAL PAPER CO ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

MEMORANDUM RULING

Before the court is a Motion for Preliminary Approval of a Modified Class Action Settlement [doc. 199] filed by plaintiff Rose Epperson. Non-settling defendants BNSF Railway Company ("BNSF") and International Paper Company ("IP") (collectively, "non-settling defendants") oppose the motion. Docs. 202, 203.

I.
BACKGROUND

This suit arises from alleged ground contamination from two creosoting facilities in Beauregard Parish, Louisiana. Specifically, former plaintiff Larry Ashworth asserted that his property was contaminated by facilities owned, respectively, by Shreveport Creosoting Company and IP, both of which are located about five miles from his property.[1] Doc. 77. The former was classified as a Superfund Site by the EPA in 2018. Doc. 122, att. 2. Ashworth also alleged that contamination resulted from the storage and/or transfer of

---

[1] Ashworth alleged that creosoting operations began at a plant constructed on "Parcel B" by Shreveport Creosoting Company around 1918 and lasted until around 1963, when IP acquired the site. Doc. 77, ¶¶ 5–7. IP then took over Shreveport Creosoting Company's operations and transferred them to "Parcel A," on the north end of IP's property in Beauregard Parish. *Id.* at ¶ 8. Creosoting operations continued at Parcel A until 1989. *Id.* at ¶ 11.

creosoting products from these sites by BNSF. Accordingly, he filed a complaint in this court against BNSF and IP, as well Kerr McGee Chemical Corporation, Kerr McGee Operating Corporation, Anadarko Petroleum Corporation, and Occidental Petroleum Corporation as successors/ancestors in title to Shreveport Creosoting Company and its parent company, American Creosoting Company. Doc. 1, ¶ 9. There he also made class allegations on the theory that his land contamination had resulted from a toxic plume that also impacted surrounding parcels. He defined the proposed class as "at a minimum composed of non-owner residents, home and landowners in the flood plain and subsurface sand and aquifer, between the original sites of contamination and Plaintiff's property." Doc. 1, ¶ 45.

Occidental and Anadarko moved to dismiss the claims against them for lack of personal jurisdiction, reserving their rights to argue that Ashworth's suit violated an injunction issued by the Honorable Katherine B. Forrest of the United States District Court for the Southern District of New York. Doc. 36. Proceedings in this court were stayed upon consent motion of Ashworth, Occidental, and Anadarko. Docs. 40, 41.

Occidental and Anadarko then filed a motion in the Southern District of New York, seeking to enforce the injunction. *See In re Tronox*, No. 1:14-cv-5495, docs. 102, 103 (S.D.N.Y.). Essentially, Occidental and Anadarko argued that Ashworth's claims were derivative or duplicative of claims settled by Anadarko in bankruptcy proceedings. The Honorable Paul Oetken, who was assigned the case due to Judge Forrest's retirement, denied Occidental and Anadarko's motion on February 19, 2021. *Id.* at doc. 131. Occidental and Anadarko appealed to the Second Circuit, which heard oral argument on

November 17, 2022. *Id.* at doc. 136; *see In re Tronox Inc.*, No. 21-627 (2d Cir.). Since that time, the parties reached an agreement in principle to settle the action and the appeal was stayed on their joint motion. *See* doc. 101. Under the proposed settlement, Occidental and Anadarko will pay a sum toward the "hard costs" of litigating this action against the remaining defendants in exchange for a release of claims by plaintiff and members of the proposed class. Doc. 105, att. 3. Plaintiff's counsel also acknowledged numerous difficulties in continuing a suit against Occidental and Anadarko, including the *Tronox* bankruptcy, a pending motion to dismiss for lack of personal jurisdiction filed by those defendants, and questions as to liability with difficulty accessing sources of proof given that the creosoting operations ceased decades ago. Doc. 105, att. 3, ¶ 1.9.

Ashworth moved for approval of the settlement and this court conducted a hearing on the matter on October 12, 2023. Docs. 105, 139. At the hearing the undersigned expressed concerns about the size of the proposed class and gave Ashworth four weeks to revise his motion. Doc. 139. Following that revision, which shrank the geographical boundaries of the proposed class, the court held a status conference and indicated that issues as to Ashworth's ability to represent the personal injury claims still precluded certification of the settlement class. Doc. 169.

Ashworth then filed a motion to substitute Rose Epperson as named plaintiff and amend the complaint, which the court granted over the objections of non-settling defendants. Docs. 184, 194. Epperson now brings this motion, seeking the court's preliminary approval of a modified class action settlement with Occidental and Anadarko

under Federal Rule of Civil Procedure 23(e). Doc. 199. Non-settling defendants IP and BNSF oppose the motion. Doc. 202.

## II.
## LAW & APPLICATION

### A. Standing

First, the court must determine whether IP and BNSF have standing to object to the proposed settlement. "The question of standing is a 'threshold determinant of the propriety of judicial intervention.'" *Bhatia v. Piedrahita*, 756 F.3d 211, 217 (2d Cir. 2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)) (cleaned up). In general, standing requires

> an allegation of a present or immediate injury in fact, where the party requesting standing has alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues. There must be some causal connection between the asserted injury and the challenged action, and the injury must be of the type likely to be redressed by a favorable decision.

*Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 804 (1985) (internal quotations omitted)). Non-settling defendants lack standing to object to a proposed settlement agreement unless they can demonstrate "plain legal prejudice." *LeBlanc v. Tex. Brine Co., LLC*, 989 F.3d 359, 364 (5th Cir. 2021). To meet this bar, the objecting party must produce more than "[m]ere allegations of injury in fact or a tactical disadvantage as a result of a settlement[.]" *In re Vioxx Prods. Liab. Litig.*, 388 F. App'x 391, 395 (5th Cir. 2010) (quoting *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 246 (7th Cir. 1992)).

BNSF and IP have argued that they are prejudiced by the certification of a settlement class because it may impact the certification of a litigation class against them.[2] They point to two district court decisions allowing non-settling defendants to object on this basis. *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *5 (D. Or. Mar. 19, 2019), *report and recommendation adopted*, 2019 WL 2288432 (D. Or. May 29, 2019); *Schoenbaum v. E.I. Dupont De Nemours & Co.*, 2009 WL 4782082, at *10–*11 (E.D. Mo. Dec. 8, 2009). In the former, the court observed the lack of controlling Ninth Circuit precedent on the issue and further noted that the case law cited by plaintiffs could not be read so broadly as to "prevent the court from examining [non-settling defendants'] objections to provisional class certification." *Ciuffitelli*, 2019 WL 1441634 at *11. In the latter, the court noted the considerable overlap between the issues in certifying a settlement class and certifying a litigation class. It further noted that the litigation was no longer in its infancy and that it saw "no reason why, if Plaintiffs desire to pursue litigation class certification at some point in this litigation, they should not do so in conjunction with settlement class certification." *Schoenbaum*, 2009 WL 4782082, at *11. The court added that it had "no wish to certify classes for settlement, with the knowledge that it may reach a different result on certifying the same or similar classes for litigation." *Id.* Accordingly, it found that "the most expedient and accurate means" of dealing with non-settling

---

[2] On plaintiff's previous attempts at settlement approval, BNSF and IP also opposed terms within the proposed class notice informing potential class members that "[t]here IS A STRONG FACTUAL BASIS to show that [IP] substantially caused the extensive contamination within the proposed class area." *See* doc. 133, p. 8; doc. 105, att. 4, p. 2 (emphasis in original). That language has been removed from the proposed notice in the instant motion. *See* doc. 199, att. 2, pp. 38–42. BNSF and IP show no other basis for formal legal prejudice under the proposed settlement.

defendant's objections to the predominance requirement under Rule 23 was by combining litigation and settlement class certification. *Id.*

*Ciuffitelli*'s discussion of precedent is limited and unpersuasive.[3] *Schoenbaum* was a compromise decision to address non-settling defendants' objections by also handling certification of the litigation class. In recommending the "plain legal prejudice" standard, the Fifth Circuit stated:

> A defendant who loses the race to settle with the plaintiff, or who simply decides to take his chances at trial, should not suffer any substantive or procedural disadvantage when other defendants do settle. We fail to see, however, why a plaintiff should be foreclosed from voluntarily settling with one defendant on mutually agreeable terms simply because those terms remove plaintiff's economic incentive to settle with the other defendants. That, it seems to us, is a consequence that may well flow from *any* settlement with less than all defendants.

*Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1165 (5th Cir. 1985). The terms of Occidental and Anadarko's settlement do not impact any concrete legal right of the non-settling defendants, such as contribution and indemnity. Even the tactical implications may be minimal. When considering certification of a litigation class, the court will have the opportunity to consider the impact on trial management and "to adjust the class, informed by the proceedings as they unfold." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citing Fed. R. Civ. P. 23). This case is not in the posture, as with *Schoenbaum*, where the court may presently consider certification of both the litigation and settlement classes. Accordingly, BNSF and IP lack standing to make their objections now. The court

---

[3] Similar to the Fifth Circuit, the Ninth Circuit requires a non-settling defendant to demonstrate "formal legal prejudice" before it can voice objections to a settlement. *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 998 (9th Cir. 2005). The *Ciuffitelli* court relied on the lack of any precedent addressing standing in the provisional certification context, but did not address the "formal legal prejudice" standard.

will have full opportunity to consider them, as well as the potential merits of plaintiff's claims, at later stages of the litigation.

### B. Settlement Approval

A class action may only be settled with court approval and notice to all members. Fed. R. Civ. P. 23(e). Approval of such a settlement requires a two-step process:

> First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel. Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002). At this stage, the court must necessarily determine if the proposed class is proper for settlement purposes before evaluating the settlement's terms. *Id.* at 426–27.

#### 1. Certification

##### a. Legal Standard

When a settlement is reached prior to class certification, the court "must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Jones v. Singing River Health Sys.*, 2016 WL 6106518, at *2 (S.D. Miss. Jan. 20, 2016). This requires conditional certification of a settlement class under Rule 23(a) and (b). *Amchem Prods., Inc.*, 521 U.S. at 613. Certification at this stage is subject to heightened scrutiny because the court "will lack the opportunity, present when a case is litigated, to adjust the class, informed by proceedings as they unfold." *Id.* at 620.

Federal Rule of Civil Procedure 23 controls class actions and provides:

> (a) **Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> 
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defense of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.
> 
> (b) **Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
> 
> . . . .
> 
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23. "Rule 23(a) contains an implied requirement that the class be adequately defined and clearly ascertainable by reference to objective criteria." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 911 (E.D. La. 2012). Meanwhile, the predominance inquiry under Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

    b. **Application**

        i.     **Rule 23(a)**

The claims in this matter are based on alleged tortious acts at two creosoting plants. The settlement class encompasses:

> all residents, homeowners, and landowners within the geographical boundaries depicted in Exhibit E to the Settlement Agreement (i.e., residents, homeowners, and landowners within the estimated boundaries of the floodplain and subsurface aquifer that extends from northeast corner of the southeast of boundary of the American Creosote DeRidder Superfund Site to

>the northeast along the railroad right of way to Louise Street, then south to Rock Street, east to Ronald Regan Highway (U.S. Hwy 190), southeast on Ronald Regan Highway to Carr de Louisiana 26, southeast along Carr de Louisiana 26, then south down Townsley Road, then southwest from the intersection of Townsley Road and Scallon Road to State Route 394, to the west-northwest along State Route 394 to Bobby Stracener Road, before continuing west to Ronald Regan Highway, and then north-northwest to Ball Road, west along Ball Road to immediately before the DeRidder Wastewater Treatment Plant and then north-northwest to the southeast corner of the southeast boundary of the American Creosote DeRidder Superfund Site) and/or other individuals (e.g., former residents) who may have suffered bodily injury and/or property damage and might assert a claim for associated harms, including compensatory damages, medical monitoring, economic damages, and/or injunctive relief based on contamination alleged to emanate from the American Creosote DeRidder Superfund Site.

Doc. 200, pp. 7–8.

Under the first Rule 23(a) factor, numerosity, "the number of members in a proposed class is not determinative of whether joinder is impracticable" but a class of 100 to 150 members "is within the range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). In previous attempts at settlement approval plaintiff submitted a declaration showing that at least 735 putative class members had registered with plaintiff's counsel. Doc. 105, att. 2, ¶ 2. Plaintiff now indicates that the proposed class is still large even after revision of the geographic boundaries. *See* doc. 200, pp. 22–23. Joinder of this many potential plaintiffs would be impractical; the first requirement is therefore met.

The second factor, commonality, "does not require that all questions of law or fact raised in the litigation be common" and "is [a] more qualitative than quantitative" standard. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F.Supp.3d 456, 482 (E.D. La. 2020). This requirement "is easily met in most cases." *Id.* (quoting *Stewart v. Winter*,

669 F.2d 328, 335 (5th Cir. 1982)). Here the claims arise from the same allegations of tortious behavior by defendants, resulting in alleged land contamination and exposure within a confined geographic area. Accordingly, common questions of fact and law exist as to both liability and damages.

The typicality element "requires that the named representatives' claims be typical of those of the class." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1054 (S.D. Tex. 2012). "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.* (quoting *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001)). Here plaintiff's personal injury claims arise from the same alleged course of conduct by defendants and are predicated on the same legal theories as those of the putative class. This requirement is likewise met.

The last requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This criterion, which aims to protect the rights of absent class members, requires courts to consider the adequacy of the proposed class representative and the adequacy of class counsel." *In re Chinese-Manufactured Drywall*, 424 F.Supp.3d at 483. "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *James*, 254 F.3d at 571 (internal quotation omitted). Meanwhile, "adequacy of counsel asks whether the attorneys who seek to represent the class are competent to do the

job." *In re Chinese-Manufactured Drywall*, 424 F.Supp.3d at 483. There are no apparent conflicts between plaintiff Epperson and the other members of the class; as outlined above, she is seeking relief for the same alleged land contamination impacting the putative class. There is no information on class counsel's experience in the record[4], but the court notes that additional counsel Andrew Glenn from the New York firm of Glenn Agre Bergman & Fuentes LLP has signed the motion for settlement approval on behalf of plaintiff. This attorney defeated Occidental and Anadarko's motion in the Southern District of New York, and along with local counsel appears to have sufficient litigation experience to serve on behalf of the putative class.

   **ii. Rule 23(b)**

  Finally, the plaintiff must demonstrate the predominance of common questions of law or fact and the superiority of a class action "for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To this end the court considers the following: (a) the interests of the members of the class in individually controlling prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) concentrating the litigation of the claims in a particular forum; and (d) the difficulties likely to be encountered in management of a class action. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998).

---

[4] Counsel assert generally that they are "competent counsel experienced in litigating class actions." Doc. 199, att. 2, p. 60, ¶ 16.

The predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem Prods.*, 521 U.S. at 623. "[C]ommon issues must constitute a significant part of the individual cases" and the inquiry is "a matter of weighing, not counting, issues." *In re Deep Water Horizon*, 910 F.Supp.2d at 912 (internal quotations omitted). The court need not consider potential trial management problems for a settlement-only certification. *Id.* at 911. Rule 23's requirements "demand undiluted, even heightened attention in the settlement context," and the court cannot ignore the standards based on perceived notions of a settlement's fairness. *Amchem Prods.*, 521 U.S. at 620, 622. However, courts "regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns." William B. Rubenstein, *Newberg on Class Actions* § 4:63 (5th ed.); *see, e.g.*, *Ramirez v. DeCoster*, 142 F.Supp.2d 104 (D. Me. 2001).

In the context of litigation classes, "[c]ourts have repeatedly held that claims for personal and emotional injuries arising from exposure to toxic chemicals are inappropriate for class treatment because individualized fact issues concerning specific causation and damages predominate over any common issues."[5] *Myers v. BP Am., Inc.*, 2009 WL 2341983, at *5 (W.D. La. July 29, 2009) (citing *Steering Committee v. Exxon Mobil Corp.*,

---

[5] *See also Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273 (S.D. Ala. 2006) (denying certification in pesticide contamination suit, even though common issues existed such as "whether Ciba created DDT and BHC wastes; whether, when, and how those wastes may have migrated offsite; the pathways of that migration; and the characteristics and impacts of those chemicals" because adjudication of these issues "would neither establish Ciba's liability to any class member nor fix the level of damages awarded to any class member."); *Modern Holdings, LLC v. Corning, Inc.*, 2018 WL 1546355 (E.D. Ky. Mar. 29, 2018) (finding several Rule 23 requirements unmet for proposed class of landowners and residents alleging injury resulting from decades of contamination by glass-manufacturing facility); *Duffin v. Exelon Corp.*, 2007 WL 845336 (N.D. Ill. Mar. 19, 2007) (same for alleged groundwater contamination from nuclear power plant); *Martin v. Shell Oil Co.*, 198 F.R.D. 580 (D. Conn. 2000).

461 F.3d 598, 602–04 (5th Cir. 2006)). Those concerns are not present here, however. The court is not addressing liability. Additionally, the proposed settlement does not call for a calculation of individual damages at this stage—instead, it requires that a sum be deposited into a litigation fund. And in the event some portion remains in the litigation fund and must be divided between class members, infra, the court has reason to believe at this preliminary stage that it may be done according to a formula without allowing individual issues to predominate. The first Rule 23(b) factor is therefore met.

As for the superiority prerequisite, the court must compare the class as a procedural mechanism to available alternatives. *See Chauvin v. Chevron Oronite Co., LLC*, 263 F.R.D. 364, 370 (E.D. La. 2009) ("Superiority essentially demands that the class action must be superior to other available methods for the fair adjudication of the controversy."). Settling this matter as a class offers a decided advantage, given the difficulties identified *infra* in proving liability. Additionally, class-wide settlement helps the court and the parties avoid the potential trial management problems and costs and complexity of litigation. *In re Volkswagen and Audi Warranty Extension Litig.*, 273 F.R.D. 349, 354 (D. Mass. 2011). Accordingly, the requirements of Rule 23(b)(3) are satisfied and the court will likely be able to certify the class for settlement purposes.

**2. Fairness inquiry**

    **a. Governing law**

"Under Rule 23(e), the Court must not only find that it will likely be able to certify the class, but also that it will likely be able to approve the proposal as fair, reasonable, and

adequate, as is required by Rule 23(e)(2) for final approval." *In re Flint Water Cases*, 2023 WL 7724502, at *9 (E.D. Mich. Nov. 15, 2023). The court thus considers whether:

 (A) the class representatives and class counsel have adequately represented the class;

 (B) the proposal was negotiated at arm's length;

 (C) the relief provided for the class is adequate, taking into account:

  (i) the costs, risks, and delay of trial and appeal;

  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

  (iv) any agreement required to be identified under Rule 23(e)(3); and

 (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(a)(2). The first two factors look to the procedural fairness of the proposed settlement while the latter two are substantive, evaluating the adequacy and equity of the class relief. *Id.* at advisory committee's note to 2018 amendment. The goal of this recent amendment, however, was "not to displace any [case-law] factor, but rather to focus the court and lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* Accordingly, the six factors laid out by the Fifth Circuit for evaluating settlement fairness are also relevant:

> (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' prevailing

on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.

*In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 194–95 (5th Cir. 2010) (quoting *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004)). "Because the Rule 23 factors and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *O'Donnell v. Harris Cnty., Tex.*, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019) (collecting cases). More succinctly, however, "[f]ederal courts generally find preliminary approval of the settlement and notice to the proposed class appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Cashon v. Encompass Health Rehab. Hosp. of Modesto, LLC*, 2023 WL 6201515, at *4 (E.D. Cal. Sep. 22, 2023) (quoting *Lounibos v. Keypoint Gov't Sols. Inc.*, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014)).

### b. Proposed settlement

Under the proposed Modified Settlement Agreement and Release, plaintiff's counsel acknowledges the risk of continuing a suit against Occidental and Anadarko in light of the following uncertainties:

> (i) whether Occidental and Anadarko are subject to personal jurisdiction in this Court; (ii) whether the Tronox Injunction bars the claims against Occidental and Anadarko, (iii) whether the creosoting plant operated by the alleged predecessor of Occidental and Anadarko at the American Creosote DeRidder Superfund Site is a source of the surface runoff or contaminated groundwater complained of, and (iv) whether Occidental and Anadarko are

> liable for (or likely to be held liable for) the historic operations of that creosote plant.

Doc. 199, att. 2, ¶ 1.11. Occidental and Anadarko, while denying any liability, also acknowledge that the claims should be settled on a class-wide basis "in light of the expense, disruption, and uncertainty of continued litigation." *Id.* at ¶ 1.12. Accordingly, the parties propose a settlement on the following terms: Occidental and Anadarko will pay into the attorney escrow account for class counsel $3.5 million "to be used for hard costs incurred to date associated with the Action, and hard costs going forward, including but not limited to engineers, toxicologist, air and water modelers, doctors, deposition costs, travel, historic document assembly, and other costs traditionally associated with prosecution of an environmental case alleging personal injury and property damage." Doc. 19, att. 2, ¶ 6.1. These funds "shall not be used for attorneys' fees, and no attorney fee shall be taken by Class Counsel." *Id.* Occidental and Anadarko will also pay the reasonable costs required to provide notice to the settlement class. *Id.* at ¶ 6.2. In the event settlement funds remain in the attorney escrow account after the suit is resolved, the funds will be distributed to settlement class members "in a manner approved by the Court at a later date." *Id.* at ¶ 6.3. Occidental and Anadarko also agree to dismiss their pending appeal in the Second Circuit. *Id.* at ¶ 4.2 In return, plaintiff and the members of the settlement class will fully and finally release any claims they may have against Occidental and Anadarko arising from the American Creosote Superfund Site. *Id.* at ¶¶ 12.1–5. The release will exclude claims against non-settling defendants and any other potential defendant besides Occidental and Anadarko. *Id.* at ¶ 12.7.

### c. Application

As to the procedural factors, the court is satisfied for the reasons set forth above that both the class representative and class counsel have adequately and diligently represented the proposed class. The court has also reviewed the terms of the proposed settlement, which appear fair in light of the potential obstacles to a suit against Anadarko and Occidental, and were negotiated by experienced and informed counsel after years of litigation. Additionally, there is no evidence of fraud or collusion. On the substantive side, the court has no reason to doubt counsel's representations as to the uncertainty of recovery in litigation. Given that class counsel will take no fee from the settlement and that this settlement fund will allow continuation of the litigation against other defendants, increasing the possibility of compensatory recovery for class members, the proposal appears fair.[6] "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *O'Donnell*, 2019 WL 6219933, at *9 (quoting *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1063 (S.D. Tex. 2012)). That presumption applies here and preliminary approval will be granted.

### III.
#### CONCLUSION

For the reasons stated above, the Motion for Preliminary Settlement Approval [doc. 199] will be **GRANTED** and the Motion to Dismiss [doc.36] filed by Occidental and

---

[6] The court cannot make any determination on the distribution of unused funds unless and until it has more information about the size of the class, the nature of the claims, and the amount (if any) of funds remaining.

Anadarko will be **DENIED AS MOOT**. The court will issue a separate Order setting deadlines relating to notification and final approval.

    **THUS DONE AND SIGNED** in Chambers on the 9th day of August, 2024.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**