**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

ROSE L. EPPERSON,
Individually
and as class representative for all similarly situated persons,

Plaintiff,

v.

INTERNATIONAL PAPER COMPANY, KERR-MCGEE CHEMICAL CORPORATION, KERR-MCGEE OPERATING CORPORATION, and BNSF RAILWAY COMPANY,

Defendants.

Civil Action No. 2:20-CV-00053

Judge James D. Cain, Jr.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT INTERNATIONAL PAPER COMPANY'S MOTION TO QUASH OR LIMIT PLAINTIFF'S RULE 30(B)(6) NOTICE**

Perry R. Sanders, Jr.
The Sanders Law Firm, LLC
400 Broad Street
Lake Charles, LA 70601
perry@perrysanders.com

Andrew K. Glenn
Trevor J. Welch
Glenn Agre Bergman & Fuentes LLP
1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
aglenn@glennagre.com
twelch@glennagre.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

RELEVANT BACKGROUND ........ 3

ARGUMENT ........ 10

I. RELEVANT STANDARD ........ 10

II. PLAINTIFF IS ENTITLED TO DEPOSE IP'S CORPORATE REPRESENTATIVE, AND THE DEPOSITION IS NECESSARY TO BIND IP. ........ 12

III. PLAINTIFF'S 30(B)(6) DEPOSITION TOPICS SEEK RELEVANT, IN-SCOPE CLASS CERTIFICATION DISCOVERY AND SHOULD NOT BE LIMITED. ........ 15

CONCLUSION ........ 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .......... 18

*B & B Advisory Servs., L.L.C. v. Bombardier Aerospace Corp.*,
2003 WL 22383575 (E.D. La. Oct. 9, 2003) .......... 17

*Blank v. Tomorrow PCS, L.L.C.*,
2018 WL 10772661 (E.D. La. Apr. 20, 2018) .......... 11, 12, 18, 19

*Brazos River Authority v. GE Ionics, Inc.*,
469 F.3d 416 (5th Cir. 2006) .......... 11, 13

*Dotson v. Edmonson*,
2017 WL 11535244 (E.D. La. Nov. 21, 2017) .......... 18

*F.D.I.C. v. Hays*,
1998 WL 1782547 (W.D. Tex. Jan. 9, 1998) .......... 14

*Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.*,
348 F.R.D. 54 (E.D. La. 2024) .......... 11, 12, 15, 18

*Gray v. First Winthrop Corp.*,
133 F.R.D. 39 (N.D. Cal. 1990) .......... 18

*Gulf Prod. Co. v. Hoover Oilfield Supply, Inc.*,
2011 WL 2669294 (E.D. La. July 7, 2011) .......... 15

*Hamm v. Acadia Healthcare Co.*,
2023 WL 12088740 (E.D. La. June 1, 2023) .......... 17

*Hart v. Lowe's Home Centers, LLC*,
2021 WL 3476609 (W.D. La. Aug. 6, 2021) .......... 12, 14

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*,
2007 WL 1054279 (D. Kan. Apr. 9, 2007) .......... 15

*Herbert v. Lando*,
441 U.S. 153 (1979) .......... 10

*Hickman v. Fox Television Station, Inc.*,
231 F.R.D. 248 (S.D. Tex. 2005) .......... 14

*Huber v. Zethros Ship Agent & Brokers*,
2000 WL 145364 (E.D. La. Feb. 9, 2000) ... 14

*Hunt v. McNeil Consumer Healthcare*,
2012 WL 2871211 (E.D. La. July 12, 2012) ... 10

*In re Terra Int'l, Inc.*,
134 F.3d 302 (5th Cir. 1998) ... 12

*Manuel v. Turner Indus. Grp., LLC*,
2021 WL 1187072 (M.D. La. Mar. 29, 2021) ... 13

*Mayberry v. Wal-Mart Louisiana, LLC*,
2015 WL 420284 (W.D. La. Jan. 29, 2015) ... 10, 11, 12, 13, 14, 15, 16

*McCluskey v. Belford High Sch.*,
2011 WL 13225278 (E.D. Mich. Mar. 10, 2011) ... 18

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) ... 10

*Reed v. Bennett*,
193 F.R.D. 689 (D. Kan. 2000) ... 15

*Sterling v. Velsicol Chemical Corp.*,
855 F.2d 1188 (6th Cir. 1988) ... 10

*Stewart v. Winter*,
669 F.2d 328 (5th Cir. 1982) ... 13, 17, 18

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ... 18

*Waters v. Lowe's Home Centers, LLC*,
2019 WL 5309969 (E.D. La. Oct. 21, 2019) ... 11, 12, 14

**Rules**

Fed. R. Civ. P. 23 ... 18

Fed. R. Civ. P. 26 ... 10, 12, 15

Fed. R. Civ. P. 30(b)(6) ... 1, 11, 12, 14

Fed. R. Civ. P. 30(d)(3) ... 16

Plaintiff Rose L. Epperson respectfully submits this memorandum of law in opposition to Defendant International Paper Company ("IP")'s Motion to Quash Plaintiff's Rule 30(b)(6) Notice or, in the alternative, Limit Plaintiff's Rule 30(b)(6) Notice (ECF No. 242, "Motion").[1]

## PRELIMINARY STATEMENT

IP cities no valid legal basis to quash plaintiff's right to a Federal Rule of Civil Procedure ("Rule") 30(b)(6) deposition, and plaintiff's 30(b)(6) deposition topics are relevant and limited to matters "necessary for Plaintiff to fashion a class," under applicable law and include matters for which Judge Cain advised plaintiff specifically needs discovery. The Motion should be denied in its entirety.

For over forty years, IP operated a wood treatment plant in DeRidder, Louisiana (the "facility," "facilities," or "site"). IP's operations included the pressure treating of utility poles and pilings with a soup of chemicals including a creosote mixture which changed throughout the course of operations. The facility was a constant toxic emissions machine – hazardous to human health, the environment, and land use. Contamination from the site included air emissions, contamination of the public waterways, community soils, and groundwater – which includes the drinking water aquifer – because of IP's inability to remediate. Now plaintiff seeks to bind IP to the specifics of its activities and their effects.

Judge Cain instructed the parties to enter a phase of class certification discovery ("Phase I Discovery") to ascertain the scope and geographical area of a potential class, including to help

---

[1] Accompanying this Memorandum is the August 20, 2025 Declaration of Jason Rotstein ("Rotstein Decl."). Citations to "Ex._" refer to the exhibits annexed to the Rotstein Decl. Citations to "Mot. _" are to "Defendant International Paper Company's Memorandum in Support of its Motion to Quash Plaintiff's Rule 30(b)(6) Notice, or, in the alternative, Limit Plaintiff's Rule 30(b)(6) Notice" (ECF No. 242-1). Unless otherwise noted, all internal quotations and citations are omitted.

the Court with specifics on emissions and exposures from the site. Judge Cain also made clear on the record at the January 7, 2025 hearing that an involved 30(b)(6) deposition, likely lasting multiple days, would be necessary during class certification discovery.

A 30(b)(6) deposition is common practice and routine in any discovery period, in a tort case such as this, and during class certification discovery. And, plainly, plaintiff has a right to bind IP to the specifics of its operations and emissions and to its representative's answers to legitimate questions, including on IP's deficient document production, which IP completed one business day before filing this Motion.

The circumstances of this Motion and the Motion itself are in line with IP's behavior during the discovery period: avoidance, obstruction, stonewalling, and delay. IP states that a 30(b)(6) deposition would be "pointless and unduly burdensome" because "the witness's response in a 30(b)(6) deposition would likely refer [p]laintiff to [] documents" – which is patently against the rule. Prior to filing this Motion, IP did not meet and confer in good faith. At the meet and confer on plaintiff's deposition topics, IP represented that it was only offering provisional positions and said that plaintiff could not hold it to any stated position. Prior to committing to any position for which a meet and confer could be helpful, IP filed this Motion.

IP's Motion is also deficient on its face. IP offers conclusory objections without specific reasons, including why a particular deposition topic is not necessary or helpful to class certification – as required. It does not reference the pleadings or Judge Cain's instructions as to the scope and limits of class certification discovery. The case law IP provides does not pertain to 30(b)(6) depositions or deposition notices; and the case law that does supports plaintiff's right to take a 30(b)(6) deposition of IP. IP thus cannot carry its burden on this Motion.

Plaintiff's 30(b)(6) topics are relevant and proportional to the needs of the case – plaintiff's one and only shot through discovery to ascertain the scope of a potential class. The topics are limited in number – sixteen topics – and have articulable time and geographic limits concerning a single facility, its operations, emissions, policies and procedures, and remediation. Judge Cain has already recognized that discovery must address the scope and geography of the proposed class – IP's emissions and exposures, its on-site activities and off-site effects. The case law recognizes that plaintiff's deposition topics are standard topics in the class certification and tort setting discovery context, including plaintiff's topics on facility personnel who were involved with or witnessed operations and IP's investigation and remediation activities, including regulatory compliance and communications with regulators. Because the topics help delineate the extent of IP's emissions and the size and nature of a potentially affected class, they easily meet the relevance and proportional standard.

The Motion should be overruled and denied, therefore, and the 30(b)(6) deposition of IP should be scheduled promptly.

## RELEVANT BACKGROUND

### I. Class Certification Discovery

On February 5, 2025, Judge Cain entered a scheduling order commencing Phase I Discovery into "matters necessary for Plaintiff to fashion a class and file a motion for class certification." ECF No. 237 ("Scheduling Order"). Prior to entering the Scheduling Order, at the Court's January 7, 2025 hearing, Judge Cain provided clear instructions to the parties on the scope of class certification discovery. *See* ECF No. 231 (Jan. 7, 2025 Hearing Transcript, "Tr.").

Judge Cain outlined the importance of this stage of discovery to the case: plaintiff "need[s] to do this discovery to help us define if there is a potential class." ECF No. 231, Tr.

30:8-10. And specified the information that plaintiff needs: plaintiff "need[s] information about the volume, emissions, basically, from the site," Tr. 24:12-13, and the "type" and "nature" of emissions from the facility. Tr. 25:14-15; 27:2-3. Judge Cain further advised that plaintiff needs information from IP on "exposure amount" and "exposure rate" – "there was a facility there, so it's kind of like you're trying to figure out what the geographical boundaries of exposure were." Tr. 27:4-7; 28:7; 37:14-16. That inquiry, according to Judge Cain, necessarily encompasses discovery into facility operations: "what you [IP] emitted from your facility when it was in operation, how much you emitted." Tr. 31:5-6.

At the January hearing, IP raised the same objection to discovery as it raises in its instant Motion. IP suggested that discovery was premature at this stage and at most should be severely limited because plaintiff had yet to describe and define the class. But Judge Cain repeatedly clarified that plaintiff has "a lot of discovery to do," Tr. 28:25, and the data plaintiff needs is very involved:

> how it [chemical] was used, when it was used. And that's where the tedious part comes in. . . . [T]hey [IP] might tell you they used X chemical and they might tell you in a year they used, you know, X thousands of gallons of its; but what happened to it, where did it go, how did it get used, what processes was it used in.

Tr. 43:10-15. The Court also expressly acknowledged the necessity of a detailed and extended 30(b)(6) deposition to examine an IP representative on the data, to review and analyze the data with the representative, and – where incomplete or missing – obtain the necessary data: "It won't be an easy ***30(b)(6) deposition***. ***It'll take you days***, from my experience, ***to weed through that type of data and to get it***." Tr. 43:19-21 (emphasis added).

Judge Cain thus instructed the parties that plaintiff needs to take discovery, including depositions, to see if it can form a potential class.

## II. Plaintiff's Requested Discovery

On February 6, 2025, plaintiff propounded its First Set of Document Requests to IP. Plaintiff's document requests follow Judge Cain's guidance, including covering the following subject matter: facility systems and operations, chemical use and emissions, production and sales volumes, management and control of facility operations, and regulatory compliance and remediation.

IP did not substantially complete its production until August 8, 2025 – one business day before filing the instant Motion. As alluded to in its opening brief, Mot. at 6, the majority of IP's production comprises publicly available documents that IP recently downloaded from the Louisiana Department of Environmental Quality ("LDEQ")'s website.

There is an explanation for this action suggested in IP's production – [redacted]:

> [redacted]

IP-EP026711 at IP-EP026715 (Ex. A).

IP's collection and review efforts, over an extended seven-month period, has been deficient, and the production contains glaring holes and is incomplete. For example, IP produced chemical and hazardous substance use information and emissions records only for select years in which the facility operated. IP did not produce: sales and production information; information on the chemical formula used in creosote-treatment operations or documents on the decision to discontinue use of pentachlorophenol ("PCP") in operations. IP also did not produce complete

records of emissions, discharges and spills into the community air and water systems, with the exception of administrative violation records downloaded from the LEDQ website; and IP produced few communications on remediation, closure, and decommissioning strategy and plans. These examples are only illustrative of the deficiencies in form and substance of IP's production.

The documents IP produced, however, show, that the potential contamination, including soil, water, and air contamination is wide-ranging and persistent and remediation efforts even up until this day have been ineffective – even as the specific details require greater discovery.

A document that purports to be a 2023 site review memorandum from third-party consultant WSP USA Inc. on behalf of IP to the LDEQ states that the pump and treat corrective action used at the DeRidder facility since 1987 (for 36 years) has not resulted in a significant reduction of the groundwater contamination plume emanating from the facility and the extent of the constituents of concern in groundwater and groundwater flows:

> **Current Approach**
>
> Pump & Treat:
>
> - Not an effective remedial approach
>   - *Operating since 1987 (36 years) with no foreseeable end*
>   - *Plume extent is unchanged*
>   - *Newer technologies available*

*See* IP-EP022170 at IP-EP022171, IP-EP022180 (Ex. B).

IP also produced documents from the LDEQ on IP's large-scale discharge of contaminants into the public waterways. An LDEQ memorandum – which IP apparently recently downloaded from the LDEQ website – details a single incident from December 26 and 27, 1982 in which there was a discharge by IP "of approximately 740,000 gallons of wastewater contaminated with creosote and phenols" and that "IP has discharged illegally from this facility at least 17 times since 1971." *See* IP-Epperson-LDEQ-EPA00028628 (Ex. C). The violation

assessment related to the incident, specifically, penalized IP for "discharge of wastewater contaminated with creosote and phenols into the waters of the state, specifically Mill Branch and Palmetto Creek" on December 26 and 27, 1982. IP-Epperson-LDEQ-EPA00028630 (Ex. D).

IP's productions initially did not contain a single custodian or any metadata information. After plaintiff outlined the numerous deficiencies in IP's productions during meet and confers and correspondence, IP did include in its production a collection from two custodians – proposed by plaintiff – and some metadata information. As a result of IP's delay tactics and stonewalling of plaintiff's discovery efforts, the parties stipulated to extend the discovery schedule, *see* ECF No. 241, with the understanding that IP would use the additional time to correct the deficiencies in its production. After IP substantially completed its production on August 8, 2025, plaintiff provided IP with a production deficiency letter on August 14, 2025.

## III. Plaintiff's 30(b)(6) Notice and IP's Representations.

On May 21, 2025, plaintiff served a 30(b)(6) deposition notice ("Notice") on IP, with sixteen deposition topics. The deposition topics cover class scope issues and documents and information that IP produced: operations and processes at the facilities, including production and distribution (Topic 1); the roles and responsibilities of personnel involved in operations and distribution, including waste containment and disposal (Topic 2); products, materials, and chemicals present at the facilities (Topic 3); chemicals used in operations and the creosote formula used for all years of operations (Topic 4); testing and analysis performed by IP or its contractors on emissions and releases from the facilities (Topic 5); IP's knowledge of the potential effects to human health and the environment of its DeRidder operations (Topic 6); air and groundwater contamination from the facilities (Topic 7); warnings and notices issued by IP concerning the releases and emissions from the facilities (Topic 8); policies and procedures

concerning operations at the facilities (Topic 9); IP's mitigation and remediation efforts concerning the facilities, including its superfund site (Topic 10); regulatory investigation and assessment of operations (Topic 11); communications with regulators concerning operations (Topic 12); complaints and demands concerning IP's operations (Topic 13); disposal of waste from the facilities (Topic 14); communications concerning this action (Topic 15); and the factual bases for IP's defenses (Topic 16).

The parties met and conferred on the Notice via videoconference on June 5, 2025. IP prefaced the meeting by stating that it would not commit to any position at this time and was only providing initial responses to the Notice. IP thus frustrated plaintiff's ability to rely on IP's representations, stonewalling plaintiff's discovery efforts, and did not confer in good faith to resolve any issue.

IP proposed to designate Emily W. Lee, IP's remediation manager, as its 30(b)(6) witness – plaintiff had previously served a deposition notice to Emily W. Lee on May 30, 2025, and proposed Ms. Lee as a collection and production custodian to IP.[2]

On the proposed deposition topics, IP stated that it intended to draw a distinction in the discovery it provides between on-site and off-site activities and believed that all topics concerning contaminations, emissions, off-site migrations, and the potential health effects from operations should be off-limits at the deposition.

Plaintiff responded that on-site activities necessarily impinge on off-site activities and effects and emissions, contaminations, migrations, and exposures are precisely the subject matter discovery plaintiff needs from IP at this stage, including because IP produced selected

---

[2] IP initially proposed holding the 30(b)(6) deposition on the week of July 21, but IP also had not completed its production and suggested extending the discovery schedule.

information on these topics. For example, IP produced the following information on off-site migrations from the facility after operations closure:

[redacted]

IP-EP024863 (Ex. E).

[redacted]

IP-EP029864 (Ex. F). These are only a sampling of the off-site migrations, which IP produced documents on – in bits and pieces and incomplete form – and to which plaintiff needs greater specifics.

IP also questioned, as it does in its Motion, Mot. at 6, whether it had a knowledgeable representative to testify on the proposed topics. It proposed further restrictions on the deposition, including that any questioning into issues of causation be considered premature and inappropriate, and that further discovery into causation be considered outside the scope of permissible discovery at this stage – regardless of whether plaintiff intends to show general or

generic causation on its motion for class certification.[3] Plaintiff rejected this proposal and reserved rights.

## ARGUMENT

IP's Motion should be denied in its entirety. Judge Cain presumed that an extensive multi-day 30(b)(6) is necessary and essential to plaintiff's class certification discovery. *See* ECF No. 231, Tr. 43:19-21. Plaintiff is plainly entitled to depose IP under Rule 30(b)(6) and the Court's Scheduling Order. The 30(b)(6) deposition topics follow the pleadings and instructions provided by Judge Cain at the January hearing and cover in-scope, class certification discovery. Plaintiff is also entitled to ask IP about what it produced and did not produce. And IP's objections are conclusory and inadequate to limit plaintiff's in-scope discovery.

### I. RELEVANT STANDARD

Pursuant to Rule 26(b)(1) "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Rule specifies that relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *See Mayberry v. Wal-Mart Louisiana, LLC*, 2015 WL 420284, at *2 (W.D. La. Jan. 29, 2015). The discovery rules are accorded broad and liberal treatment. *See Hunt v. McNeil Consumer Healthcare*, 2012 WL 2871211, *3 (E.D. La. July 12, 2012) (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)). In

---

[3] *See, e.g., Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999) (affirming trial court's class certification holding that common issues predominate because the class members "claim injury from the same defective ventilation system over the same general period of time" against a single defendant); *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) ("where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy," "each class member lived in the vicinity of the landfill and allegedly suffered damages as a result of ingesting or otherwise using the contaminated water").

ruling on discovery motions, the Court should "look to the claims and defenses in the pleadings and, after reviewing the discovery requests, determine whether such requests may lead to the discovery of admissible evidence." *Blank v. Tomorrow PCS, L.L.C.*, 2018 WL 10772661, at *1 (E.D. La. Apr. 20, 2018).

Rule 30(b)(6) "allows parties to obtain testimony from a corporation, provided the party describes with reasonable particularity the matters for examination." *Waters v. Lowe's Home Centers, LLC*, 2019 WL 5309969, at *2 (E.D. La. Oct. 21, 2019) (citing Fed. R. Civ. P. 30(b)(6)). While "the Rule preliminarily imposes a duty to identify with reasonable particularity the specific categories or topics for inquiry, . . . courts generally recognize that Rule 30(b)(6) establishes the minimum about which the witness must be prepared to testify, not the maximum. . . . [T]he purpose of adopting Rule 30(b)(6) was not to provide greater notice of protections to corporate deponents, but rather to have the right person at deposition." *See Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.*, 348 F.R.D. 54, 72-73 (E.D. La. 2024), *review denied sub nom. Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore Pte Ltd*, 2024 WL 5086077 (E.D. La. Dec. 12, 2024). Under 30(b)(6), plaintiff "has a right to bind the company to its representative's answer to legitimate questions." *Mayberry*, 2015 WL 420284, at *3.

"The company has a duty to make a conscientious, good-faith effort to designate a knowledge representative." *Id.* at *2 (citing *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006)). "The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos*, 469 F.3d at 433. "If the designated representative lacks knowledge of specified topic, the corporation's appearance is considered a non-appearance if it has failed to designate another

available witness who possesses the requisite knowledge about the relevant issues." *See Goodyear*, 348 F.R.D. at 72.[4]

Rule 26(c) governs the issuance of protective orders and contains a requirement that good cause be shown: "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). Rule 26(c)(1) also requires a certification that the moving party has conferred or attempted to confer in good faith with the other party to attempt to resolve the issue without the Court's interference. *Waters*, 2019 WL 5309969, at *2.

## II. PLAINTIFF IS ENTITLED TO DEPOSE IP'S CORPORATE REPRESENTATIVE, AND THE DEPOSITION IS NECESSARY TO BIND IP.

The Court's Scheduling Order did not place any restriction on the type of discovery plaintiff could seek "to fashion a class and file a motion for class certification." Under Rule 30(b)(6), Plaintiff is plainly entitled to the corporate deposition of IP, and plaintiff would be prejudiced if that right is not honored. *See Waters*, 2019 WL 5309969, at *3 ("As an initial note, the [c]ourt cannot preclude a corporate deposition that Plaintiffs are entitled to pursuant to Federal Rule of Civil Procedure 30(b)(6)."); *Hart v. Lowe's Home Centers, LLC*, 2021 WL 3476609, at *1 (W.D. La. Aug. 6, 2021) (noting that it would be an abuse of discretion to deprive plaintiff of a 30(b)(6) deposition to which plaintiff is clearly entitled); *Mayberry*, 2015 WL 420284, at *2.

---

[4] "When the agent lacks knowledge about relevant facts, the corporation has failed to designate an available, knowledgeable, and readily identifiable witness. . . . In such a case, the court treats the failure to designate as a failure to appear for deposition. Thus, the court can sanction the corporation under Rule 37(d)." *Blank*, 2018 WL 10772661, at *3.

IP argues in its Motion, nevertheless, that the 30(b)(6) deposition is outside the scope of class certification discovery and premature. The cases IP reference, however, provide, that "a certain amount of discovery is essential in order to determine the class action issue and the proper scope of a class action." *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982).

In its Motion, IP willfully ignores Judge Cain's instruction that plaintiff "need[s] to do this discovery to help us define if there is a potential class." ECF No. 231, Tr. 30:8-10. Judge Cain presumed that a multi-day 30(b)(6) deposition would be necessary, including to take discovery from IP on chemical use and volume at the facility, "what happened to it, where did it go, how did it get used, what process was it used in." ECF No. 231, Tr. 24:19-20; Tr. 43:10-15; Tr. 43:19-21. Plaintiff's class certification discovery including its 30(b)(6) deposition discovery is essential, therefore, because this is the one and only chance plaintiff has to ascertain the scope of a potential class.

To avoid its obligation to present and prepare a 30(b)(6) designee "to the extent matters are reasonably available, whether from documents, past employees, or other sources," *Brazos*, 469 F.3d at 433 (5th Cir. 2006), IP also asserts that the 30(b)(6) deposition is unnecessary. IP's argument that the deposition is unnecessary because the information is "publicly available," it provided discovery in another form, and the witness's responses would likely refer to those documents is sorely misguided and contrary to law. *See Mayberry*, 2015 WL 420284, at *3 (W.D. La. Jan. 29, 2015) (argument that 30(b)(6) deposition sought information already produced in writing discovery answers/responses unavailing, plaintiff "has a right to 'bind' the company to its representative's answers to legitimate questions"); *Manuel v. Turner Indus. Grp., LLC*, , 2021 WL 1187072, at *10 (M.D. La. Mar. 29, 2021) (placing no general limitation on 30(b)(6) deposition, and overruling objection that the information sought is not only outside of

the scope . . . but is more easily and efficiently furnished through written discovery because the claims are six to eight years old and a corporate representative would only parrot the information in the claims record); *Hart*, 2021 WL 3476609, at *1 (defendant's argument that deposition discovery is unnecessary due to existence of a surveillance video and because it can provide written discovery "borders on the frivolous"); *Waters*, 2019 WL 5309969, at *3 ("any argument set forth by [d]efendant that a Rule 30(b)(6) deposition is unnecessary, even in a 'standard trip-and-fall case,' is without merit"); *F.D.I.C. v. Hays*, 1998 WL 1782547, at *2 (W.D. Tex. Jan. 9, 1998) (30(b)(6) deposition not duplicative of other discovery, "neither an interrogatory response nor a report from a third-party expert binds or limits the party/corporation in the same manner as 30(b)(6) deposition testimony").

The 30(b)(6) deposition is thus essential and necessary to bind IP, and plaintiff is entitled to ask IP about the documents and data IP produced and the reason why other data and documents were not produced, including because of the potential destruction of documents. *See Mayberry*, 2015 WL 420284, at *3 (spoliation issues present in the case make discovery of company's retention policy a critical and relevant inquiry at corporate deposition). As Judge Cain stated on the record, plaintiff needs "to weed through . . . data and to get it." ECF No. 231, Tr. 43:19-21. The deposition of IP's corporate representative is therefore particularly essential and necessary because of IP's failure to produce documents critical to class certification. *See Hickman v. Fox Television Station, Inc.*, 231 F.R.D. 248, 252–53 (S.D. Tex. 2005), *aff'd*, 177 F. App'x 427 (5th Cir. 2006) (noting that plaintiff's obstructionist behavior and failure to produce all responsive documents necessitated second sitting of deposition); *Huber v. Zethros Ship Agent & Brokers*, 2000 WL 145364, at *5 (E.D. La. Feb. 9, 2000) (denying motion to quash 30(b)(6) deposition including because party made a minimal effort to locate responsive documents).

Plaintiff's request for a 30(b)(6) deposition is perforce also not an undue burden. *See Goodyear*, 348 F.R.D. at 68–69 (the Rules "take a demanding attitude toward objections, and courts have long interpreted the rules to prohibit general, boilerplate objections"). The cases IP cites stand for this proposition. *See Gulf Prod. Co. v. Hoover Oilfield Supply, Inc.*, 2011 WL 2669294, at *2-6 (E.D. La. July 7, 2011) (holding plaintiff entitled to corporate deposition even after failing to comply with a court order to narrowly tailor topics of discussion to not encroach on privileged issues or lawyer strategy); *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) (ordering plaintiff to re-issue 30(b)(6) notice because the language of the discussions topics indicates that the areas of inquiry will "include, but not be limited to" the areas specifically enumerated and does not allow defendant to adequately designate and prepare the corporate designee).[5] The Court should therefore enforce plaintiff's right to a 30(b)(6) deposition.

## III. PLAINTIFF'S 30(B)(6) DEPOSITION TOPICS SEEK RELEVANT, IN-SCOPE CLASS CERTIFICATION DISCOVERY AND SHOULD NOT BE LIMITED.

Plaintiff's 30(b)(6) discussion topics comprise relevant and necessary discovery for class certification. Plaintiff's 30(b)(6) notice is limited to sixteen discussion topics. *Compare Gulf Prod.*, 2011 WL 2669294, at *4-6 (ordering plaintiff to limit the proposed topics from 82 to 15). The discussion topics are also relevant and proportional to the needs of this case, including under Rule 26(b)(1) in resolving the important issues at stake during class certification discovery. *See Mayberry*, 2015 WL 420284, at *2 (plaintiff's listed topics for discussion including eighteen categories of information sought are reasonably calculated to lead to the discovery of admissible evidence as required by Fed. R. Civ. P. 26(b)(1)).

---

[5] *See* also *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 1054279, at *4 (D. Kan. Apr. 9, 2007) (finding that where the examining party used the phrase "including but not limited to," but then followed it with an extensive example list of the records and reports for which information is sought, there can be no claim that the deposed party could not identify the "outer limits of the areas of inquiry").

In *Mayberry*, also a tort case, plaintiff sought a corporate deposition concerning "any and all information about the subject incident," information on the personnel and managers who worked in the vicinity of the incident; information regarding investigation of the incident and remediation; recordation regarding the incident; and policies/procedures regarding incident documentation and recordation. *Id.* at *3. The court held that this was appropriate and relevant discovery from a corporate defendant to resolve the issues at stake and reinforced that the only ground for a motion to limit a deposition is that it "is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." *Id.* (citing Fed. R. Civ. P. 30(d)(3)).

Plaintiff needs analogous discovery here. IP's DeRidder facilities were a constant toxic emissions machine – a single course of tortious conduct committed by a single defendant. IP's activities in DeRidder concerned the constant release of toxic emissions into the public airway, soils, and waterways during the 40+ years of creosote operations. And IP has been unable to remediate the contamination in the soil and waterways, which continue to affect human health, land use, and the environment. As *Mayberry* reflects, plaintiff is entitled to depose IP on the scope and extent of the harm, including any and all information on the subject incidents and emissions; the personnel and managers who were involved with and witnessed the incidents; IP's investigation and remediation of these incidents; and IP's policies and procedures concerning recordation and management of incidents.

Plaintiff's topics closely align to Judge Cain's recognition of the information plaintiff needs for ascertaining the scope of a class and certification: any and all information concerning operations and emissions (Topics 1-4); investigations (Topics 5-6); exposures and health effects (Topics 7-8); policies and procedure concerning management and control measures (Topic 9);

remediation (Topic 10); regulatory communications, assessment, and compliance (Topics 11-12); complaints and demands concerning operations ( Topic 13); disposal and migration of wastes (Topic 14); communications concerning this action (Topic 15); and the factual bases for IP's defenses (Topic 15).

IP's objections are, for the most part, conclusory, boilerplate objections – that plaintiff's topics "clearly [go] beyond Phase I discovery," are "merits-related topics" and are overly broad. The cases it cites in support are inapposite – they concern requests for production or interrogatories and discovery requests that do not contain appropriate pleading-specific subject matter limitations such as time, location, or geography – all present here. *See B & B Advisory Servs., L.L.C. v. Bombardier Aerospace Corp.*, 2003 WL 22383575, at *1 (E.D. La. Oct. 9, 2003) (noting that some *requests for production and interrogatories* were denied because they bore no relation to class action issues); *Stewart*, 669 F.2d at 331(affirming denial of plaintiffs' *document requests* which ask for documents relating to every aspect of life in the jails of Mississippi's *82 counties*, potentially seeking millions of pages of document from a large number of disparate and unrelated situations); *Hamm v. Acadia Healthcare Co.*, 2023 WL 12088740, at *8 (E.D. La. June 1, 2023) (limiting plaintiff's broad merits-based document requests "relating to all putative class members" to Louisiana – which defendants had already agreed to provide – rather than to every state in which defendants operate healthcare facilities). Plaintiff's requested discovery is, in contrast, a targeted, single location, facility-specific inquiry, not an 82-county or countrywide sweep pertaining to hundreds of locations and facilities.

As IP's resort to conclusory objections and its cases reveal, there is no bright line between class certification and merits discovery, rather the test is whether the discovery is "necessary or helpful to the certification decision," in the context of the case. *Stewart*, 669 F.2d

at 331; *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered [by a court] to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 374 (2011) (class determination "will entail some overlap with the merits"); *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 41 (N.D. Cal. 1990) ("Discovery relating to class certification is closely enmeshed with merits discovery, and in fact cannot be meaningfully developed without inquiry into basic issues of the litigation"); *McCluskey v. Belford High Sch.*, 2011 WL 13225278, at *2 (E.D. Mich. Mar. 10, 2011) (noting that bifurcation of discovery is not supposed to lead to needless motion practice over what is merit discovery as compared to class discovery).[6]

Proper objections must also be specific as to particular discovery requests. *See Goodyear*, 348 F.R.D. at 68-69; *Dotson v. Edmonson*, 2017 WL 11535244, at *3 (E.D. La. Nov. 21, 2017) (party opposing discovery "must show the information sought can have no possible bearing on the claim or defense of the party seeking discovery," overruling objection because party did not put forward specific, detailed arguments to show how a party's policies and procedures manual can have no possible bearing on the plaintiffs' claims). It is IP's burden on this motion to show with specific reasons why a specific topic is not "necessary" or "helpful" to certification – which IP has not articulated because it cannot. Plaintiff's topics are appropriate to

[6] "Although an evaluation of the probable outcome on the merits is not properly part of the certification decision, discovery in aid of the certification decision often includes information required to identify the nature of the issues that actually will be presented at trial." Fed. R. Civ. P. 23 advisory committee's notes to 2003 amendments. "[D]iscovery on the class certification prerequisites would not be futile because class discovery is frequently not distinguishable from merits discovery, and classwide discovery is often necessary as circumstantial evidence even when the class is denied." *Blank*, 2018 WL 10772661, at *2 (quoting 3 Newburg on Class Actions § 7.8 (4th ed.)).

the context of the case. They encompass the time, geography, and subject matter of the pleadings, the documents IP did and did not produce, and follow Judge Cain's guidance on the materials plaintiff needs to scope a class. *See Blank*, 2018 WL 10772661, at *1, *3. IP's threadbare and conclusory objections should be denied and overruled therefore because they do not reference these sources.

A close examination of plaintiff's topics show that they are appropriately tailored and standard 30(b)(6) topics, including the topics IP notes in its Motion: policies, procedures, or practices concerning the operation of the facility (Topic 9); communications with regulatory authorities concerning operations at the facility (Topic 12); complaints about facility operations (Topic 13); and IP's pleadings and defenses (Topic 16). *See id.* (finding that 30(b)(6) topics related to the corporations' history, structure, nature, and bank accounts are standard topics designated for a corporate representative for class certification discovery and that defendants' relationship with third parties are relevant to the claims alleged by plaintiffs and proportional to the needs of the case). Because IP's conclusory objections are inadequate to limit plaintiff's topics and because plaintiff's requested discovery is relevant and necessary, IP's motion for a protective order should be denied in its entirety.

## **CONCLUSION**

For the foregoing reasons, IP's motion to quash or for a protective order limiting plaintiff's 30(b)(6) notice should be denied and overruled in its entirety. And the Court should award plaintiff other and further relief that the Court deems just and proper, including expanding the time-limit of plaintiff's 30(b)(6) deposition.

Dated: August 20, 2025

*/s/ Perry R. Sanders, Jr.*
Perry R. Sanders, Jr.
The Sanders Law Firm, LLC
400 Broad Street
Lake Charles, LA 70601
perry@perrysanders.com
Telephone: 719-630-1556

David L. Wallace
518 North Pine Street, P.O. Box 489
DeRidder, LA 70634
wnblawoffice@bellsouth.net
Telephone: 337-462-0473

Andrew K. Glenn
Trevor J. Welch
Jason Rotstein
Nathan J. Ades
Glenn Agre Bergman & Fuentes LLP
1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
aglenn@glennagre.com
twelch@glennagre.com
jrotstein@glennagre.com
nades@glennagre.com
Telephone: 212-970-1600

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on August 20, 2025, a true and correct copy of the foregoing document was served on all counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/ Perry R. Sanders, Jr.*
Perry R. Sanders, Jr.
The Sanders Law Firm, LLC
400 Broad Street
Lake Charles, LA 70601
perry@perrysanders.com
Telephone: 719-630-1556

David L. Wallace
518 North Pine Street, P.O. Box 489
DeRidder, LA 70634
wnblawoffice@bellsouth.net
Telephone: 337-462-0473

Andrew K. Glenn
Trevor J. Welch
Jason Rotstein
Nathan J. Ades
Glenn Agre Bergman & Fuentes LLP
1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
aglenn@glennagre.com
twelch@glennagre.com
jrotstein@glennagre.com
nades@glennagre.com
Telephone: 212-970-1600

*Attorneys for Plaintiff*